In the

# United States Court of Appeals

### For the Seventh Circuit

No. 00-2017

PETER LEWIS,

*Plaintiff-Appellant,*

*v.*

ODIE WASHINGTON, Director,
Illinois Department of Corrections,
MARY NICHOLS, RICHARD GRAMLEY,
LIEUTENANT SHAW, and LIEUTENANT JONES,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 C 1050—**Harold A. Baker**, *Judge.*

ARGUED JULY 10, 2002—DECIDED AUGUST 14, 2002

Before COFFEY, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Illinois prisoner Peter Lewis sued various employees of the Illinois Department of Corrections ("IDOC") under 42 U.S.C. § 1983, alleging that they failed to protect him from an attack by his cellmate and that they conspired to cover up the attack by ignoring many of his grievances and requests. The district court dismissed the case, concluding that Lewis had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C.

§ 1997e(a). We affirm the dismissal of the failure-to-protect claim, but remand the conspiracy claim to the district court for further proceedings.

## Background

In October 1997 Lewis complained to unnamed security officers at Henry Hill Correctional Center that his new cellmate, Joseph Carlos, was "aggressive and threatening" and that he was afraid to stay in the cell with him. The next day Lewis spoke with Lieutenant Jones, who assured Lewis that he would speak with Carlos. Lewis contends that Carlos displayed a "furious anger" toward him after Lt. Jones spoke with Carlos. The following night Lewis called for security officers because Carlos began "acting 'crazy' by jumping up and down in the middle of the floor screaming and hitting the walls." The security officers did not respond to Lewis's calls for help. The next day Lewis told Lt. Jones about Carlos's behavior and requested to be moved to another cell, including a segregation cell for his own safety. Lt. Jones refused Lewis's transfer request.

A few days after Lt. Jones's refusal, Lewis awoke in the morning to the sound of Carlos speaking to security officer Lt. Shaw. Lt. Shaw had escorted Carlos to his cell to retrieve his personal property because he was being placed in segregation for fighting in the dining hall that morning. Lt. Shaw left Carlos alone in the cell with Lewis, and Lewis went back to sleep. Carlos suddenly began to beat Lewis with a metal walking cane. Lewis screamed for help, and a security officer appeared and took Lewis to the health care unit. Lewis spent two days in the health care unit and was treated for an injury to his right leg.

As soon as Lewis was released from the health care unit he filed two grievances concerning the Carlos attack. The first grievance sought disciplinary action against Carlos

and listed numerous witnesses to the attack. The second grievance, titled "Staff Conduct," alleged that Lt. Shaw endangered Lewis's life by returning Carlos to his cell in a hostile state despite knowing of Lewis's complaints of Carlos's behavior. That grievance also alleged that Lt. Jones failed to transfer him to another cell.

The following month Lewis spoke with Officer Connor of the Internal Affairs Office regarding the Carlos attack. He explained that he wanted to press criminal charges against Carlos, and Officer Connor said that she would look into it. Officer Connor also explained that Carlos had denied attacking Lewis, that there were no eye witnesses, and that Lewis had not been injured in the attack. Lewis then asked Officer Connor for a polygraph examination to prove that he was telling the truth, and Officer Connor said that she would look into it.

In December 1997 Lewis learned that a grievance officer had denied his "Staff Conduct" grievance and that the Chief Administrative Officer ("CAO") of the prison had concurred. The denial did not address Lewis's grievance against Carlos or Lewis's request for a polygraph examination, but did explain that Lewis had 30 days to appeal the CAO's decision to the Administrative Review Board ("ARB"). A few days later and before appealing to the ARB, Lewis wrote to the Internal Affairs Office and to Warden Richard Gramley seeking responses to his grievance against Carlos and to his polygraph request. Lewis also requested from a grievance officer a copy of the investigation report on which the denial of his "Staff Conduct" grievance was based. Lewis received no response to any of these requests.

That same month Lewis asked Internal Affairs Officer Connor about the status of his polygraph examination request. She told him that he needed to file a grievance in order to take a polygraph examination. Lewis then filed a

grievance in January 1998 in which he alleged that he had sent a polygraph request to the grievance officer, the Internal Affairs Office, and Warden Gramley, but received no response. He also renewed his request for criminal charges against Carlos. When he received no response, Lewis filed another grievance on January 20, 1998, requesting the same relief and concluding that he had "not received any kind of a respond [sic] . . . granting or denial [sic] the request to the polygraph test and to press chargest [sic] for the attacked [sic]." About a week later he received a response that "there is no record of a request for a polygraph test" and that "[a]ll requests are to be submitted to the Warden." The response did not mention Lewis's grievance against Carlos or explain why his other requests had gone unanswered.

That same week Lewis happened to see Warden Gramley and explained to him that he had received no responses to his requests for a polygraph examination and his grievance against Carlos. Warden Gramley said that he would look into the matter and get back to him, but Lewis again received no response. In February 1998 Lewis again explained to the warden that he wanted a polygraph examination and that he wanted to press criminal charges against Carlos. About a week later the warden replied that he saw no basis to pursue disciplinary action against Carlos because Lewis had no injuries and because Carlos had denied the attack. But the warden wrote that he would forward the investigation report to the State's Attorney, who would decide whether to pursue criminal charges against Carlos.

Lewis waited to hear from the State's Attorney, but he received no response. About three months after receiving the warden's letter, Lewis appealed his "Staff Conduct" grievance to the ARB. Lewis explained that he never received a response regarding his grievance against Carlos or his request for a polygraph examination. In June 1998

the ARB declined to consider Lewis's appeal because it was untimely filed.

In January 1999 Lewis filed this § 1983 case against various employees of the IDOC. In February 2000 the district court dismissed the case without prejudice because, by untimely appealing to the ARB, Lewis had failed to exhaust administrative remedies. The court, however, granted Lewis leave to "reinstate the case upon filing a written statement with the court within 14 days of receipt of this order establishing why he failed to file a timely appeal" to the ARB. In a footnote, the district court advised Lewis that "the court must first be persuaded by the plaintiff's filing that cause and prejudice exist for his procedural default before the court will reinstate the case." Lewis submitted his written statement within the 14-day period, but the district court clerk had already entered judgment against him. After receiving Lewis's statement, however, the district court reiterated that Lewis's "complaint was dismissed for failure to exhaust administrative remedies."

## Analysis

### I.  Failure-to-protect claim

Lewis filed a "Staff Conduct" grievance alleging that two security officers failed to protect him from his cellmate. That grievance was denied in December 1997, and Lewis had 30 days to appeal the denial to the ARB. Lewis did not appeal until May 1998.

Lewis contends that, despite his untimely appeal to the ARB, the district court erred in dismissing his failure-to-protect claim for failure to exhaust administrative remedies. He lists several grounds for reversal: (1) he had no duty to exhaust because the prison officials rendered administrative remedies unavailable by failing to respond

to many of his other grievances and requests; (2) he substantially complied with the exhaustion requirement; and (3) the government should be equitably estopped from raising the exhaustion defense because it prevented him from exhausting.

Lewis first argues that he was not required to exhaust administrative remedies because the prison officials' failure to respond to many of his grievances and requests rendered those remedies unavailable. Lewis must exhaust only those administrative remedies that are available to him. *See* 42 U.S.C. § 1997e(a); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). The Eighth and Fifth Circuits have deemed administrative remedies exhausted when prison officials fail to respond to inmate grievances because those remedies had become "unavailable." *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (per curiam). Both circuits based their holdings on the plain meaning of "available." *Miller*, 247 F.3d at 740; *Underwood*, 151 F.3d at 295. We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA "so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001).

But prison officials responded to Lewis's "Staff Conduct" grievance, despite their failure to respond to his other grievances and requests. And the grievance form clearly explained, without exception, that Lewis had 30 days to appeal the denial. We have recently reiterated that "to exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim," including the prison's rules for filing an appeal. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Thus,

because Lewis received a response to his "Staff Conduct" grievance, administrative remedies were available for his failure-to-protect claim, and he was required to appeal the denial of his grievance within the time frame set by the prison.

Lewis next argues that the district court erred in dismissing his case because he substantially complied with the exhaustion requirement. Exhaustion of administrative remedies is mandatory because the PLRA "eliminated the [district courts'] discretion to dispense with [it]." *Booth v. Churner*, 532 U.S. 731, 739 (2001). Nevertheless, some courts apply a substantial compliance doctrine to cases where the cause of action accrued prior to April 26, 1996 (effective date of the PLRA). *McCoy v. Gilbert*, 270 F.3d 503, 512 (7th Cir. 2001); *Curry v. Scott*, 249 F.3d 493, 502 (6th Cir. 2001); *Wolff v. Moore*, 199 F.3d 324, 327 (6th Cir. 1999). In those cases, a prisoner need only show that he substantially complied with the prison's grievance policy by "clearly giv[ing] the institution notice of his particular demands and reasonably trigger[ing] an attempt to resolve them." *McCoy*, 270 F.3d at 512.

Lewis argues that even though the events in his complaint occurred after the effective date of the PLRA, we should apply the substantial compliance doctrine when "requests and grievances have gone completely unanswered." But courts have applied the substantial compliance doctrine only to pre-PLRA causes of action to avoid the injustice of requiring exhaustion of remedies that were not required to be exhausted at the time of the alleged conduct and could no longer be exhausted when the PLRA became effective. *McCoy*, 270 F.3d at 512; *Wyatt v. Leonard*, 193 F.3d 876, 879-80 (6th Cir. 1999); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). We decline to extend this narrow exception to include cases involving the failure to respond to grievances. *See Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001) (suggesting in dicta that the substantial compliance doctrine applies only to pre-PLRA

causes of action, but declining to decide the issue because prisoner failed to raise substantial compliance in the district court), *cert. denied*, 122 S. Ct. 1207 (2002). Thus, because Lewis's cause of action accrued after the PLRA's "invigorat[ion] [of] the exhaustion prescription," *Porter v. Nussle*, 122 S. Ct. 983, 988 (2002), the substantial compliance doctrine is not available to him.

Lewis finally argues that the defendants should be estopped from raising the exhaustion defense because his procedural default occurred while he waited for responses to his outstanding grievances and requests. Although we have held that exhaustion is not a jurisdictional requirement, *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000), we have yet to conclude that the exhaustion defense is subject to equitable estoppel. The Fifth Circuit is the only circuit to hold that equitable estoppel can apply to the PLRA exhaustion requirement. *Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998). Although the Fifth Circuit's ruling on this matter is persuasive because non-jurisdictional prerequisites to suit in federal court are typically subject to equitable estoppel, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Ameritech Benefit Plan Comm. v. Communication Workers of America*, 220 F.3d 814, 819 (7th Cir. 2000), *cert. denied*, 531 U.S. 1127 (2001), we need not decide the issue because Lewis cannot satisfy the requirements for equitable estoppel.

To establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment. *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000). When asserting equitable estoppel against the government, one must also prove affirmative misconduct. *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000). Affirmative misconduct "requires an affirmative act to misrepresent or mislead . . . [and] a government's failure to discharge an 'affirmative obligation' is not

the same as engaging in 'affirmative misconduct.'" *Id*. at 994 (quoting *Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1138 n.8 (7th Cir. 1988), as amended, 866 F.2d 228 (7th Cir. 1989). Moreover, omissions amount only to ordinary negligence. *Gibson*, 201 F.3d at 994.

Lewis cannot prevail on his equitable estoppel theory because his allegations concerning the prison officials' actions do not amount to affirmative misconduct. Lewis urges this court to conclude that the prison officials' failure to respond to many of his grievances and requests amounts to affirmative misconduct rather than merely a failure to discharge an affirmative obligation. Lewis likens the failure to respond to "'a pattern of false promises,'" which the Ninth Circuit has concluded amounts to affirmative misconduct. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc) (quoting *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1009 (9th Cir. 1986)). But the prison officials made no promises to Lewis that he could have reasonably interpreted as an assurance that he did not have to appeal his "Staff Conduct" grievance within the required 30 days. Lewis, however, argues that he waited to appeal because an appeal would have been unnecessary if his grievance against Carlos had been granted. Nevertheless, the time for appeal was clearly marked on the grievance form, and it made no exception for the outcome of other pending grievances. Because the prison officials did nothing to affirmatively misguide Lewis into thinking that his other grievances and requests altered the time for appeal, we will not estop the government from raising the exhaustion defense.

## II.  Conspiracy claim

Lewis alleges that the prison officials failed to answer many of his grievances and requests, including: (1) the grievance against Carlos for the attack; (2) the requests and grievances for a polygraph examination; (3) the re-

quests for a copy of the investigation report; and (4) the grievances complaining that he had not received responses to his other grievances and requests. Lewis claims that this failure to respond amounts to a conspiracy to cover up the Carlos attack. The prison officials contend that Lewis failed to exhaust his conspiracy claim because he never grieved a conspiracy to the prison. Lewis, however, filed two grievances complaining of the prison officials' failure to respond.

The district court did not separately address the conspiracy claim or determine whether Lewis had exhausted those administrative remedies. Thus, we remand the claim to the district court to determine whether Lewis exhausted his administrative remedies. In analyzing Lewis's exhaustion on this claim, the district court should consider whether Lewis's administrative remedies were available in light of the prison officials' failure to respond to some of his grievances and requests. *See Foulk*, 262 F.3d at 698; *Miller*, 247 F.3d at 740; *Powe*, 177 F.3d at 394; *Underwood*, 151 F.3d at 295.

## Conclusion

Accordingly, we AFFIRM the dismissal of Lewis's failure-to-protect claim for failure to exhaust administrative remedies and REMAND the conspiracy claim to the district court for further proceedings.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*