Jackey L. BOND, Plaintiff–Appellant,

v.

Stephen CULLINAN, M.D., et al.,
Defendants–Appellees.

No. 03–1151.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 20, 2004.*

Decided Feb. 24, 2004.

Jackey L. Bond, Danville, IL, for Plaintiff–Appellant.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Karen L. Kendall, Heyl, Royster, Voelker & Allen, Peoria, IL, Beth A. Bauer, Burroughs, Hepler, Broom, MacDonald & Hebrank Edwardsville, IL, David L. Coffman, Lewis, Rice & Fingersh, St. Louis, MO, Deborah L. Ahlstrand, Office of the Attorney General, Chicago, IL, for Defendants–Appellees.

Before BAUER, COFFEY, and ROVNER, Circuit Judges.

## ORDER

Illinois inmate Jackey L. Bond filed this *pro se* suit under 42 U.S.C. § 1983, alleging that various doctors, health care providers, and officials with the Illinois Department of Corrections (IDOC) violated his rights under the Eighth Amendment by failing to provide him with sufficient medical care. The district court dismissed each defendant, either because Bond's complaint fails to state a claim, *see* 28 U.S.C. § 1915A, or because Bond had not exhausted his administrative remedies as required by the Prison Litigation Reform Act, *see* 42 U.S.C. § 1997e(a). Bond appeals, and we affirm.

Bond's allegations arise out of a back injury he sustained in November 1996 after he slipped and fell at Logan Correctional Center, where he was then incarcerated. In March 1997 Bond's physician at Logan referred him to a neurosurgeon, who diagnosed a herniated disc pinching Bond's left sciatic nerve. The following month Bond was transferred to Graham Correctional Center, where a different neurosurgeon recommended surgery. However, Bond's treating physician at Graham, Dr. Stephen Cullinan, did not think that surgery was necessary and refused to give his authorization.

In July 1997 when Bond was transferred to Centralia Correctional Center, he filed a grievance complaining about the adequacy of his medical care at Logan and Graham and requesting that the surgery be performed immediately. In his grievance Bond named two physicians: Dr. Cullinan and a doctor who treated him at Logan but who is not named as a defendant in this suit. The grievance officer denied Bond's grievance in August after concluding that Bond was receiving sufficient medical treatment; the grievance officer noted that Bond had been referred to an orthopedic surgeon but had refused treatment and that Bond was awaiting a referral to a neurosurgeon. Bond appealed the grievance officer's decision, but while waiting for a ruling he submitted an addendum to his grievance in September 1997, complaining about the medical care he was then getting from Dr. Rajendra Shroff at Centralia. In October 1997 the Administrative Review Board denied Bond's appeal, concluding that Bond was receiving sufficient medical treatment. Later, Bond was again transferred, this time to Big Muddy River Correctional Center, where he filed numerous grievances complaining about the medical care he had been receiving. In October 1998, while incarcerated at Big Muddy River, Bond underwent the back surgery he requested.

Meanwhile, in March 1998 Bond apparently was still impatient that the surgery had not yet been performed, so he filed this suit, naming as defendants nearly every doctor or official encountered since his injury occurred: Dr. Cullinan, who treated him at Graham; Harold Cotten, the health care administrator at Centralia; Dr. Shroff, a physician at Centralia; Dr. Hal Gordon, a physician at Big Muddy River; Correctional Medical Services ("CMS") and Wexford Health Sources, private companies under contract to provide medical services to IDOC inmates at Graham, Centralia, and Big Muddy River; Philip Tinsley, the Administrative Review Board

member who reviewed Bond's grievance on appeal; and Odie Washington, the IDOC director. The district court dismissed Washington at screening for failure to state a claim, *see* 28 U.S.C. § 1915A(b)(1), a decision that was surely correct. The remaining defendants were served, but the district court dismissed each of them because Bond had not exhausted his administrative remedies.

On appeal Bond challenges the exhaustion rulings. Prisoners must exhaust all available administrative remedies before initiating a lawsuit regarding prison conditions. *See* 42 U.S.C. § 1997e; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir.1999). If a prisoner plaintiff has failed to exhaust his administrative remedies, the district court must dismiss the complaint without reaching the merits. *Perez*, 182 F.3d at 535.

 To the extent that Bond argues that his July 1997 grievance filed at Centralia complaining of the medical care he received at Logan and Graham satisfied the exhaustion requirement with regard to Dr. Cullinan, we agree. Bond attached to his complaint in the district court only the Administrative Review Board's denial of the grievance, and in his motion to dismiss Dr. Cullinan never even tried to establish that Bond's grievance did not name him. It was Dr. Cullinan's burden to prove a lack of exhaustion, *see Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002), and because he made no effort to meet that burden the district court had no basis from which to conclude that Bond had not exhausted his administrative remedies as to Dr. Cullinan. Indeed, now that the July 1997 grievance has been made part of the record before us, there can be no doubt that Bond did exhaust as to Dr. Cullinan. In his grievance Bond specifically complains of the medical treatment he received from Dr. Cullinan. Accordingly, the dis-

trict court erred in granting Dr. Cullinan's motion to dismiss on exhaustion grounds.

Further, we question the district court's dismissal of CMS and Wexford on exhaustion grounds. Bond argues that the IDOC grievance procedures did not permit him to submit a grievance challenging the medical care provided by CMS and Wexford, and thus there was nothing to exhaust. In response these corporate defendants simply assert–without citation–that Bond's failure to submit grievances challenging their actions supports the district court's dismissal. But the governing regulations do not convince us that Bond could have grieved the actions of CMS and Wexford. Section 504.810 of the Illinois Administrative Code states that a grievance should include "the name of each person who is the subject of or who is otherwise involved in the complaint," but the provision does not explain whether a "person" can include a corporation. 20 Ill. Admin. Code § 504.810. Similarly, the same provision states that grievance procedures cannot be used to challenge "decisions that are outside the authority of the department," and we question whether the actions of a private employer could be within the authority of the IDOC to resolve. *Id.* § 504.810. Our own research has not answered these questions. Since the burden was on CMS and Wexford to prove Bond's failure to exhaust, *see Walker*, 288 F.3d at 1009, we cannot conclude that the district court's dismissal for exhaustion was correct, *see Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir.2002) (inmate "must exhaust only those administrative remedies that are available to him").

Nevertheless, the district court properly concluded that Bond did not exhaust his administrative remedies as against Dr. Shroff, Harold Cotten, Dr. Gordon, and Philip Tinsley. Bond argues that he exhausted his remedies against Dr. Shroff

and Harold Cotten when he tried to enlarge his July 1997 grievance by adding an addendum while appealing its denial. But we have found no authority for a prisoner to bypass the Grievance Officer and amend a grievance after it already has been denied. *See* 20 Ill. Admin. Code §§ 504.810 (requiring that grievances be addressed to the Grievance Officer), 504.830 (directing the Grievance Officer to review grievances in the first instance). Bond could have submitted another grievance complaining that the earlier violation continued. But he did not, and we have no indication that the review board did anything but ignore the addendum when it denied Bond's appeal.

Bond's arguments that he exhausted his remedies as to Dr. Gordon and Philip Tinsley are similarly unsuccessful. Bond reasons that a grievance he submitted after filing this suit exhausted his remedies with regard to Dr. Gordon. Bond, however, was required to exhaust his administrative remedies *before* filing his § 1983 suit; the fact that he attempted to do so in the midst of litigation could not save his complaint from dismissal. *See Perez,* 182 F.3d at 535. Further, Bond submits that there were no remedies available for him to grieve Tinsley's denial of his appeal and thus there was nothing for him to exhaust before bringing suit. But nothing in the grievance procedures would have prohibited Bond from submitting a grievance complaining about Tinsley's actions. *See* 20 Ill. Admin.Code §§ 504.810, 504.830. After his appeal was denied, Bond could have submitted a grievance challenging Tinsley's assessment of his grievance appeal. Accordingly, we conclude that the district court properly dismissed Dr. Shroff, Harold Cotten, Dr. Gordon, and Philip Tinsley because Bond failed to properly grieve their conduct.

■ That leaves the three defendants who were improperly dismissed for failure to exhaust: Dr. Cullinan, CMS, and Wexford. All of them press alternative grounds for affirming, and it is well established that we can affirm on any basis supported by the record. *See Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir.2003). With regard to Dr. Cullinan, Bond pleaded himself out of court by alleging not that Dr. Cullinan withheld necessary treatment but that the doctor disagreed with another physician about whether the appropriate course of treatment should include surgery. *See Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002) (plaintiff is not required to plead facts, but if he chooses to do so he "cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief"). Indeed, the evidence shows that Dr. Cullinan referred Bond to a neurosurgeon, who performed a myelogram and CAT scan. Though Bond agreed with the neurosurgeon's recommendation that he should undergo surgery and Dr. Cullinan disagreed with that assessment, that is not enough to state a claim of deliberate indifference under the Eighth Amendment. *See Ciarpaglini,* 352 F.3d at 331 (a prisoner's disagreement with a medical professional about the appropriate course of treatment does not state a cognizable claim under the Eighth Amendment); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir.2001) (physician's negligence in treating a medical condition does not state a claim under the Eighth Amendment).

■ Similarly, Bond pleaded himself out of court by alleging only that the treatment provided by employees of CMS and Wexford was insufficient. *See Thompson,* 300 F.3d at 753. Since a "private corporation is not vicariously liable under § 1983 for its employees' deprivations of others'

168

civil rights," Bond would have had to show that an official policy of CMS and Wexford caused the violation. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir.2002). Because Bond alleged only that CMS and Wexford violated the Eighth Amendment by negligently supervising their physician employees, both defendants were properly dismissed.

A few issues remain. Bond also argues that the district court violated his rights under the Sixth Amendment by refusing to appoint counsel, but there is no constitutional right to appointment of counsel in a civil case. *See Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir.1995). Finally, we note that, although a dismissal for failure to exhaust administrative remedies is without prejudice, as to the defendants who are pleaded out of court, we modify the dismissal to be with prejudice. *See Walker*, 288 F.3d at 1009.

AFFIRMED.