# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3813

DAVID BRENGETTCY,

*Plaintiff-Appellant,*

v.

WILLIAM HORTON, JOHN DALEY,
OFFICER FARROW, JOHN DOES I-X, and
THE COUNTY OF COOK, ILLINOIS,

*Defendant-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 197—**Amy J. St. Eve**, *Judge.*

ARGUED DECEMBER 10, 2004—DECIDED SEPTEMBER 8, 2005

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* While he was awaiting trial at
the Cook County Department of Corrections (CCDOC),
David Brengettcy became embroiled in a physical alter-
cation with Officer William Horton that resulted in
Brengettcy's spending two days in the hospital. Later, a
jury convicted him of aggravated battery on a peace
officer in violation of 720 ILCS 5/12-4(b)(6), for which he
received a sentence of three years' imprisonment. Mean-
while, Brengettcy claims that he filed a grievance against
Officer Horton and the other officers involved in the
incident with the CCDOC on August 23, 2000, the day he

was released from the hospital. The grievance asserted that Horton attacked him, hitting him while he was handcuffed; after that, someone kicked him down a nearby staircase.

After failing to receive a response to his initial grievance, Brengettcy filed several others in November and December 2000. In January 2001, Brengettcy brought a civil rights suit under 42 U.S.C. § 1983 in federal court against the defendants, alleging violations of his federal constitutional rights and state law. Judge Bucklo initially presided over his case. The defendants filed two motions to dismiss, one based on *Heck v. Humphrey*, 512 U.S. 477 (1994), and the second on Brengettcy's alleged failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). After Judge Bucklo denied both motions, Brengettcy's case was transferred for administrative reasons to Judge St. Eve. Defendants presented their *Heck* and exhaustion arguments to her in the form of a motion for summary judgment; ruling only on the exhaustion point, she entered judgment in their favor. We conclude that this action was premature and that the defendants' other arguments in support of the judgment are unavailing, and thus we remand to the district court for further proceedings.

# I

Our account of the facts takes them in the light most favorable to Brengettcy. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005). On August 21, 2000, Brengettcy attended a Bible study meeting held in the mess hall on the first floor of the CCDOC. After the meeting concluded, he left the mess hall and started to walk up the stairs to the second floor. When he reached the second floor landing, he realized that he had forgotten to mail a letter. He went back down the stairs to the first floor, mailed his letter, encountered a correctional officer without incident, and returned

to the second floor.

Observing Brengettcy's return to the second floor, Officer Horton asked him why he had gone back downstairs. Brengettcy described what happened next as follows:

> After the first time when he said, mother fucker, who told you to go downstairs, I told him I went to go mail my letter, officer, and I set the bible down on his desk. He continued talking with verbal assaults with mother fuckers in it. I silenced myself. I didn't say nothing. I just looked him in the eye. He struck me. I fell back. I didn't—I looked at Halbert, Officer Halbert. He didn't say anything. So he proceeded to striking [sic] me.

Brengettcy testified that he broke Horton's attack by backing up toward the other officers and then punching Horton several times. The other officers called for assistance and within two minutes, reinforcements were on the scene. Brengettcy claims that he was then repeatedly beaten and kicked by the officers. He tried to defend himself by assuming the fetal position and covering his head until he was handcuffed. After he was handcuffed, the officers continued to beat him and he was taken to the stairwell where someone kicked him down the stairs. The next thing he recalls is regaining consciousness that evening in the hospital. His medical reports indicate that he was experiencing pain in his throat, shoulder, wrist, back, leg, and that he received sutures in his bottom lip and chipped his front teeth.

Brengettcy was released from the Cook County Hospital on August 22, 2000. In his verified complaints, he alleged that he filed a grievance with the CCDOC the following day, on August 23, 2000, which was within fifteen days of the incident as required by CCDOC's grievance policy. He did not receive a reply within 30 days as specified in the CCDOC's grievance policy nor did he get a notifica-

tion that his grievance would take longer than 30 days to resolve. In October, Brengettcy inquired about the status of his grievance with Officer McCullen, who told him that sometimes the grievances get torn up. On November 27, 2000, he filed another grievance. Again, the CCDOC failed to respond to his grievance with either a decision or a notification that it would take longer than 30 days to resolve.

On January 9, 2001, the clerk's office for the Northern District of Illinois received Brengettcy's *pro se* verified complaint alleging that Officer Horton had violated his civil rights by using excessive force during the incident. The clerk's office filed his complaint on March 13, 2001.

On May 3, 2001, the defendants moved to dismiss Brengettcy's complaint on the grounds that *Heck* barred his civil rights claims. On June 19, 2001, Brengettcy filed a *pro se* amended verified complaint adding defendant John Daley and alleging the same underlying facts. Judge Bucklo denied the defendants' motion to dismiss in an order dated July 24, 2001, explaining that:

> Brengettcy's conviction necessarily implies that he struck Horton, that he knew Horton was a peace officer, and that his striking Horton was not legally justified. It by no means necessarily implies that Horton's use of force against Brengettcy was lawful. In this action, Brengettcy cannot dispute the legitimacy of the state's sentencing him to three years in prison for striking Horton, but he can dispute the legitimacy of the alleged extrajudicial "punishment" inflicted by Horton and the other deputies.

After the court's decision, it appointed counsel for Brengettcy, and counsel filed a second amended complaint on February 21, 2002, adding defendants Officer Farrow (to whom we refer below as Pharaoh Halbert, his real name), John Does I-X, and Cook County, and withdrawing Defen-

dant Sheahan. The defendants filed a second motion to dismiss arguing that Brengettcy failed to exhaust his administrative remedies. Brengettcy responded with a memorandum, to which he attached copies of his grievance forms dated November 27, November 31, December 5, and December 7.

On July 10, 2002, Judge Bucklo denied the defendants' second motion to dismiss. She reasoned that "[p]laintiff's grievance was filed in the year 2000. Defendants do not dispute that plaintiff never received a response . . . A plaintiff is not requir[ed] to wait an unreasonable length of time—during which evidence, witnesses, and memories may be lost—for a decision before he can go forward with his federal suit." She did not explain whether she was relying on Brengettcy's alleged August 23, 2000, filing, or a later filing. On September 6, 2002, Brengettcy's case was transferred to Judge St. Eve.

On August 13, 2003, defendant Horton moved for summary judgment for essentially the same two reasons that Judge Bucklo had considered: failure to exhaust and the *Heck* bar. In addition, Horton raised a collateral estoppel defense, claiming that the excessive force issue essential to Brengettcy's claim had been resolved adversely to him in the state criminal proceeding. Horton claimed that Brengettcy had admitted "that the only grievance form that he filed pertaining to the underlying incident is the grievance dated November 27, 2000." Horton also alleged that Brengettcy did not file an appeal, but he never mentioned that the CCDOC had not responded to Brengettcy's grievances, nor did he note that Brengettcy had inquired about the status of his grievance in the fall of 2000 (taking the facts favorably to Brengettcy, at a time before the November 27 grievance).

Unfortunately, Brengettcy's counsel did not respond to Horton's motion for summary judgment in the manner

required by Local Rule 56.1(b)(3), which requires the non-moving party to file "a response to each numbered paragraph in the moving party's statement . . ." and "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment . . . ." N.D. Ill. L.R. 56.1(b)(3)(A) & (B). Instead, counsel filed a motion styled "Plaintiff's Response to Defendants' Motion for Summary Judgment." Because this motion did not comply with the Local Rules, the district court adopted Horton's statement of facts. In doing so, the court concluded that:

> Plaintiff filed a single grievance on November 27, 2000, three months after the date of the incident. Cook County Department of Corrections procedure requires inmates to file grievances with fifteen days of the underlying incident. The facts also show that Plaintiff did not file an appeal in connection within his untimely-filed grievance, and that Plaintiff was not prevented by Defendant from filing an appeal . . . . Because he has not raised an issue of material fact in connection with the exhaustion of administrative remedies, Plaintiff is barred by 42 U.S.C. § 1997e(a) from pursuing this lawsuit.

In this appeal, Brengettcy's new counsel argues that the portion of the deposition testimony on which Horton relied does not support the conclusion the district court (following the defendant's argument) drew. That portion instead is the place where Brengettcy admitted that he had not filed an appeal relating to the November 27 grievance. The excerpt, which we reproduce here, contains no admission that the sole grievance he filed was submitted on November 27, 2000.

Q: So if I go through and pulled that they made a decision and tendered it to you during the period of time, you're telling me you never appealed? Is that what your testimony is? Did you or did you not file an appeal?

A:  No.

Q:  You did not?

A:  No.

Q:  The only form you filed, according to your testi-
mony, is this grievance form that you identified
here today, right?

A:  Yes.

In addition, appellate counsel argues that Horton failed
to attach the pages of Brengettcy's deposition testimony
on which he relied to his summary judgment motion.
When he finally did attach the pages, he included only
pages 198-99 and 203-04. Acknowledging that the missing
pages were not officially part of the record, Brengettcy's
counsel quoted them in his brief for purposes of showing
how drastically they change the inference one should draw
from the section quoted above. The other pages show that
immediately prior to this exchange, Brengettcy repeatedly
testified that he filed other grievances besides the one he
filed on November 27.[1]

---

[1]  The following exchange is what was missing:

Q:  And you say you filled this [November 27 grievance form]
out and you submitted it?

A:  Yes. I submitted more than just this one, more than just
one because they don't—they look in the box and they
tear them up. That's what I heard.

Q:  But I'm asking your specific—you filled out this griev-
ance form. Is there another grievance form you filled out?

A:  I put in many grievances.

Q:  About this incident?

A:  And I didn't hear nothing from them.

Q:  Let me finish. You're saying that you submitted this

(continued...)

**II**

We review a district court's grant of summary judgment *de novo. Rooney*, 410 F.3d at 380. A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

This case is complicated because two different district court judges ruled on essentially the same issues in the case, and they reached different results. Generally speaking, a successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary when a case is transferred. See *Williams v. Commissioner*, 1 F.3d 502, 503 (7th Cir. 1993); see also John A. Glenn, Annotation, *Propriety of Federal District Judge's Overruling or Reconsidering Decision or Order Previously Made in Same Case by Another District Judge*, 20 A.L.R. FED. 13 (1974, updated Apr. 2005). "[T]he law of the case doctrine in these circumstances reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997); see also *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). As we explained in *Best*, "[a]lthough the second judge may alter previous rulings if he is convinced they are incorrect, he is not free to do so . . . merely because he has a different view of the law or facts from the first judge." *Best*, 107 F.3d at 546 (internal citations and quotation marks omitted).

---

[1] (...continued)
    grievance?

   A:   I have submitted many grievances . . . .

In this case, however, Judge St. Eve was not presented with "precisely the same question in precisely the same way" as Judge Bucklo: Judge Bucklo considered a motion to dismiss, while Judge St. Eve had a summary judgment motion before her. We must therefore decide whether the new evidence submitted with Horton's motion for summary judgment "gave the second court a compelling reason to reopen the previously decided question." *Id.* at 547. "[I]f so, we would then review the second judge's decision *de novo*, but if not, we would again take the first judge's decision as our point of reference." *Id.*

Before doing so, we must address the preliminary question whether Brengettcy's lawyer's failure to comply with Local Rule 56.1(b)(3) before the second judge dooms his appeal. While we "have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission," *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003), noncompliance with a court's local rules does not create a jurisdictional bar for the district court or for us. See *Smith v. Frank*, 923 F.2d 139, 141 (9th Cir. 1991) ("[L]ocal rules should not be construed as affecting the jurisdiction of the district court, but instead should merely regulate the practice within the court."). It merely means that the noncomplying party cannot contradict facts properly set forth in the moving party's Local Rule 56.1 statement. Our evaluation of the record, to the extent we need to look at the second judge's action, therefore proceeds on the basis of the facts Horton presented. See, *e.g.*, *Best*, 107 F.3d at 549.

The question is thus whether the new evidence that Horton submitted with his motion for summary judgment provided a compelling reason for Judge St. Eve to overturn Judge Bucklo's decision. The additional evidence included portions of Brengettcy's deposition testimony and Horton's statement of facts. In addition to those two items, both judges had before them Brengettcy's

verified complaints and the various grievances that he filed. We put to one side the controversy about what Brengettcy said in his deposition testimony, because no one called the district judge's attention to the missing pages, and we are deciding at this point whether there was enough before Judge St. Eve to justify reopening these issues. Even when a district court is proceeding on the basis of only one party's version of the facts, because of the local rules, it remains true that the underlying facts alleged must be taken in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in his favor. On that basis, we conclude that Horton's summary judgment papers did not present enough new material to justify overturning Judge Bucklo's evaluation of the two defenses. Brengettcy's original verified complaint and his first amended complaint both alleged that he filed a grievance on August 23, 2000; Horton's statement contradicted that crucial fact. Taking the inferences in Brengettcy's favor, the deposition excerpt quoted above refers only to his failure to appeal the November 27 grievance, not to the existence or non-existence of any other grievances. The relevant facts had not changed by the time Horton presented his summary judgment motion to Judge St. Eve, because he never alleged that the CCDOC issued a decision or reply to any of Brengettcy's grievances. We conclude that there was not a "compelling reason" to disrupt Judge Bucklo's ruling regarding exhaustion.

This in itself does necessarily not mean, of course, that Judge Bucklo was correct. At this juncture, we must simply decide, exercising *de novo* review, whether Brengettcy's case should have been dismissed for failure to exhaust. (This would be the standard of review whether we were considering Judge St. Eve's decision on the summary judgment motion or Judge Bucklo's decision on the motion to dismiss. Because we have concluded that there was no reason to set aside the first decision, however, the procedural problems

with the second decision are of lesser importance.) The PLRA requires that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a); see also *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is "an affirmative defense that the defendants have the burden of pleading and proving." *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). In addressing exhaustion within the context of the PLRA, we have held that § 1997e(a) requires "a prisoner [to] file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Nevertheless, we have also held that prison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable. See *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002). In *Lewis*, we followed the Eighth and Fifth Circuits in holding that "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable' . . . . We join [them] on this issue because we refuse to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Id.* (internal citations and quotation marks omitted); see also *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (per curiam).

Judge Bucklo concluded that Brengettcy "ha[d] done all that is reasonable to exhaust his administrative remedies" because the prison officials failed to respond to his grievance. She knew that Brengettcy had alleged that he filed a grievance as early as August 23, 2000, in compliance

with CCDOC's internal timetables. Her ruling was reasonable given the CCDOC's grievance policy, which requires a decision to be made on a prisoner's grievance within 30 days of filing; if no decision is possible within that time period, the prisoner is entitled to a notice that his grievance will require more than 30 days for resolution. Once a decision has been made, the policy allows "five (5) working days from receipt of the decision, to appeal to the Administrator of Program Services or designee." But the policy does not instruct a prisoner on what he is to do when the CCDOC fails to respond to his grievance and there is no decision to appeal. Particularly in the light of Brengettcy's allegations that he filed a grievance within the time period mandated by CCDOC's rules, we conclude that Horton was not entitled to judgment on the basis of any alleged failure to exhaust.

Because we have concluded that the record here did not support Judge St. Eve's decision to reopen Judge Bucklo's conclusion on exhaustion, we do not have to reach Horton's argument that Brengettcy waived his claim that Horton failed to comply with Rule 56 when Horton did not attach the deposition pages on which he relied to his summary judgment motion. The entire Rule 56 process gives us concern, however. We note that we find Horton's omission perilously close to the boundaries of zealous advocacy; it bordered on misleading the court. This is why we reproduced the omitted portion of Brengettcy's deposition testimony in footnote 1, *supra*. Looking at Brengettcy's actual testimony, and comparing it with what the defendants represented to the court, is disturbing. Judge St. Eve had no reason to suspect that the excerpt submitted to her was taken so far out of context.

Even if Brengettcy exhausted his administrative remedies, Horton argues in the alternative, his claims are barred by collateral estoppel or *Heck* because of his state court conviction for battery. Horton's *Heck* argument is easily

answered. As Judge Bucklo recognized, Brengettcy is not barred by *Heck* because his challenge that Horton used *excessive* force after he hit Horton does not undermine Brengettcy's conviction or punishment for his own acts of aggravated battery. See *Wilkinson v. Dotson,* 125 S.Ct. 1242 (2005).

Neither is Brengettcy's claim barred by collateral estoppel. Horton suggests that the question whether he used excessive force was necessarily decided during Brengettcy's state criminal trial. We therefore look to the preclusion law of Illinois to determine the effect of that judgment. 28 U.S.C. § 1738. In Illinois, issue preclusion requires that: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004). The question whether Horton used excessive force after Brengettcy hit him was not presented or decided during Brengettcy's criminal trial. This means that neither the first nor the second of Illinois's requirements are met here: the issues decided in the criminal case were not identical to those in the present case, and the criminal case did not produce a final adjudication on the excessive force point. The state court's decision not to give a self-defense instruction determined only that Brengettcy was not legally justified in hitting Horton. It implied nothing about the degree of force Horton was allowed to use in responding to Brengettcy's assault.

Finally, we must consider whether the district court properly dismissed on its own motion the defendants who did not move for summary judgment—Pharaoh Halbert, John Daley, John Does I-X, and the County of Cook (that is, everyone except Horton). Without giving

Brengettcy notice, an opportunity to show good cause, and an opportunity to request an extension of time, the court concluded that he had failed to perfect service in a manner consistent with FED. R. CIV. P. 4(m). This, we conclude, was error. See *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996); see also *Troxell v. Fedders of North America, Inc.*, 160 F.3d 381, 382-83 (7th Cir. 1998). On remand, Brentgettcy's suit against the remaining named defendants must be reinstated and he must be given an opportunity to show either that there was good cause to explain his earlier failure to effect service or that he is otherwise entitled to an extension of time. The situation with respect to John Does I-X is different; for them, there is literally no one to serve. They were properly dismissed from the action, and any effort Brengettcy may wish to make to add additional named defendants at this point must comply with all pertinent rules.

## III

We REVERSE the district court's judgment for the defendants and REMAND to the district court for further proceedings consistent with this opinion.

No. 03-3813                                                    15

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*