UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted December 19, 2005[*]
Decided December 23, 2005

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

| | |
|---|---|
| No. 05-2074 | |
| | Appeal from the United States District Court for the Southern District of Illinois. |
| SAMUEL B. BULMER, | |
| *Plaintiff-Appellant,* | |
| *v.* | No. 02 C 389 |
| DONALD S. YOUNG, Warden, ANGELA K. WINSOR, DAVID R. CHEEK, et al., | David R. Herndon,  *Judge.* |
| *Defendants-Appellees.* | |

**O R D E R**

Illinois inmate Samuel Bulmer brought suit under 42 U.S.C. § 1983 claiming that prison officials violated his rights by failing to provide him with a Kosher diet

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

that met his diabetic needs.  A magistrate judge assigned to the case recommended that summary judgment for the defendants be granted because Mr. Bulmer failed to exhaust his administrative remedies before filing suit.  The district court adopted the magistrate judge's report and recommendation and denied Mr. Bulmer's subsequent motion for reconsideration.  Mr. Bulmer timely appealed, and we now affirm.

Mr. Bulmer is Jewish and diabetic.  Upon arriving at the Shawnee Correctional Institution in late 2001, Mr. Bulmer requested Kosher meals that would also meet the dietary restrictions prescribed for his diabetes.  But when his Kosher meal service commenced, Mr. Bulmer concluded that the meals he was served did not provide the minimum calories required to satisfy his diabetic needs, and in February 2002 he submitted an emergency grievance requesting higher-calorie meals.  The chief administrative officer at Shawnee concluded that the grievance was not an emergency as defined by Title 20, section 504.840(a), of the Illinois Administrative Code, and a grievance liaison officer then advised Mr. Bulmer to resubmit the grievance in the normal manner.  Mr. Bulmer insists that he subsequently pursued two different routes of review.  First, he says, he was told that he could appeal the determination of non-emergency status, which he did on April 26 but never received an answer.  Second, Mr. Bulmer says, he refiled his emergency grievance as a routine grievance, which the chief administrative officer denied on the recommendation of a grievance officer.  At that point, continues Mr. Bulmer, he appealed the denial to the Director of the Department of Corrections (who is responsible for processing appeals, *see* 20 Ill. Admin. Code § 504.850 (2002)), who also denied it on June 10, 2002, on the recommendation of the Administrative Review Board ("ARB").  The defendants concede that Mr. Bulmer followed the second route, but maintain that he could not have pursued the first route because a determination that a grievance is not an emergency is not subject to appeal.

In March 2002, with his refiled emergency grievance still working its way through the routine review process, Mr. Bulmer filed a second emergency grievance asserting the same dietary deficiencies.  Once again, the grievance liaison officer returned it to him with the notification that it would not be deemed an emergency and that he should file it as a routine grievance.  Mr. Bulmer did not pursue this emergency grievance through routine channels.

Meanwhile, Mr. Bulmer filed this action in federal court on May 3, 2002, a month before the Director upheld the denial of the February emergency grievance that Mr. Bulmer resubmitted as a routine grievance.  In his original complaint Mr. Bulmer cites the refusal to address his February and March 2002 grievances on an emergency basis and faults the defendants for denying him a medically sufficient Kosher diet in violation of his First Amendment right to the free exercise of his religion.  During the summer of 2002, Mr. Bulmer was transferred to a different

prison, and in 2003 he filed additional grievances about the diet provided to him there that were also denied.  The district court twice granted Mr. Bulmer leave to amend his complaint to include parties and claims for incidents that occurred after his transfer.

At summary judgment, the defendants argued that Mr. Bulmer failed to exhaust his administrative remedies before bringing suit as required by 42 U.S.C. § 1997e(a).  In support of the motion, the chairperson of the ARB submitted an affidavit listing the four appeals relating to Mr. Bulmer's Kosher diet that had been received by the ARB and resolved by the Director to date.  All four of those grievances became final after Mr. Bulmer filed his lawsuit.  According to the chairperson, only one of those appeals--the one involving Mr. Bulmer's refiled emergency grievance decided on June 10--had even been received when Mr. Bulmer filed suit.  Mr. Bulmer replied that the list was incomplete, and, in particular, he asserted that his unanswered "appeal" of the determination that his February 2002 emergency grievance was not really an emergency is missing from the list.

On February 18, 2005, the magistrate judge assigned to the case issued a report and recommended that summary judgment be granted for the defendants because Mr. Bulmer conceded that the first of his appeals to be finalized was not decided until June 10, 2002, after he filed suit.  Mr. Bulmer failed to timely object to the magistrate judge's report and recommendation, and on March 8 the district court adopted its factual and legal analysis.  Mr. Bulmer finally did file objections on March 18, and though they were late, *see* Fed. R. Civ. P. 72(b) (giving parties 10 days to object to magistrate judge's report and recommendation), the district court treated them as a motion for reconsideration and addressed Mr. Bulmer's arguments.  Once again the court adopted the magistrate judge's analysis and entered summary judgment for the defendants.

Mr. Bulmer's only contention on appeal is that he exhausted his administrative remedies before filing suit on account of his February 2002 emergency grievance.  Mr. Bulmer does not contend that he exhausted his remedies by resubmitting that grievance in the normal manner because he concedes that his appeal to the Director was not finalized until a month after he filed his federal complaint.  He argues, however, that he exhausted all *available* remedies as to the emergency grievance itself because the Director never acted on his purported "appeal" from the chief administrative officer's denial of emergency status.

Mr. Bulmer is correct that inmates must exhaust only those remedies that are *available, see Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002), but there was a remedy available to Mr. Bulmer:  the grievance liaison officer advised him to refile his February 2002 emergency grievance as a routine grievance, and he did. Mr. Bulmer produced no evidence to counter the affidavit testimony of the ARB

chairperson, who explained that an inmate must pursue a grievance that has been denied emergency status by resubmitting it for processing as a routine grievance. And inmates must follow the prison's rules for exhausting their claims. *See Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002); *Lewis,* 300 F.3d at 833.

Mr. Bulmer, lacking evidence that the chief administrative officer's decision as to emergency status is even reviewable, was left to contend that there must be another route to review since he was told that he could appeal the denial of emergency status; he took this second route, he says, but the Director rendered it unavailable by not acting on his "appeal." But even assuming Mr. Bulmer was so advised, his verified declaration that he "appealed" the determination of non-emergency status is an overstatement. The letter that Mr. Bulmer calls his appeal could not have put the Director or ARB on notice that he sought to challenge the denial of emergency status. After the chief administrative officer had decided that Mr. Bulmer's February 2002 emergency grievance did not constitute a true emergency, Mr. Bulmer simply forwarded a copy of the grievance on to the ARB with a letter stating that "this is an emergency." *See McCoy v. Gilbert*, 270 F.3d 503, 512 (7th Cir. 2001) (noting that prisoner must clearly give the institution notice of his particular demands). No reasonable factfinder could determine on the basis of this letter that Mr. Bulmer had filed an appeal of the non-emergency determination. *See Cont'l Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Moreover, an appeal as to whether the grievance should have been treated as an emergency, if successful, logically would have resulted in expedited handling of the grievance by the grievance officer and chief administrative officer at Shawnee, but would not have resolved the merits of the grievance. And it is the substance of the grievance, not the question whether it should be expedited as an emergency, that was required to be decided by prison administrators before Mr. Bulmer turned to federal court. *See Pozo*, 286 F.3d at 1025 (noting that prison official's decision not to entertain untimely appeal of grievance does not imply any view about merits of grievance).

Thus, the undisputed evidence shows that no grievance was finalized before Mr. Bulmer filed his complaint. Although all but one of Mr. Bulmer's grievances about the diet provided to him at Shawnee had been finalized before the district court granted him leave to amend his complaint, the subject of the amended complaint does not concern these exhausted grievances. Thus, prison officials lacked the opportunity to take corrective action concerning the diet provided to Mr. Bulmer at Shawnee before "incurring the hassle and expense of litigation." *See Cannon v. Wash.*, 418 F.3d 714, 719 (7th Cir. 2005); *Ford*, 362 F.3d 398-99; *Perez v. Wis. Dep't Corr.*, 182 F.3d 532, 535 (7th Cir 1999). Mr. Bulmer simply brought complaint for the diet provided at Shawnee before his appeals were finalized, and that was too early. *See Ford*, 362 F.3d at 400; *Perez*, 182 F.3d at 535.

Finally, Mr. Bulmer argues that the defendants should be equitably estopped from relying on the defense that he failed to exhaust his administrative remedies because, if a determination of non-emergency status is not appealable, then prison officials misrepresented to him that he could appeal that determination. We have not yet held that the exhaustion defense is subject to equitable estoppel, but as in *Lewis*, 300 F.3d at 834, we need not answer that question because Mr. Bulmer did not establish the elements of equitable estoppel. To establish equitable estoppel a litigant must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment. *Id.* Moreover, a party asserting estoppel against the state must show affirmative misconduct. *Id.* Mr. Bulmer says that the defendants misrepresented to him that he could appeal the determination as to emergency status, but his evidence shows that the exact opposite is true: the letter from the grievance liaison officer specifically instructed him that the proper course when a grievance is denied emergency status is not to appeal that determination to the ARB, but to resubmit the emergency grievance as a routine grievance. And that Mr. Bulmer followed that course before allegedly filing his appeal demonstrates that he understood the procedure and did not reasonably rely on any oral representation. At best, a representation that he could appeal amounted to negligent misinformation, which does not constitute affirmative misconduct. *See LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000).

AFFIRMED