NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2011[*]
Decided April 18, 2011

*Before*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1673

| | |
|---|---|
| KERRY J. FARINA, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 09-2117 |
| | |
| KEITH ANGLIN, et al., | Michael P. McCuskey, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

After Illinois prisoner Kerry Farina was raped by another inmate, he sued several prison guards and administrators under 42 U.S.C. § 1983 claiming that they were deliberately indifferent to his need for protection from the assailant and for medical treatment afterward. The district court dismissed the complaint on the grounds that it fails to state a claim for the denial of medical care and that Farina had not exhausted his administrative remedies concerning the assault. We affirm the judgment.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

According to the allegations in the operative complaint, which at this stage we must presume are true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), fellow inmates at the Danville Correctional Center repeatedly threatened to sexually assault Farina when he arrived there in May 2008. Farina requested to be placed in protective custody, but instead he was transferred in July to a different section in the prison's general population. After the move Farina told a guard about the prior sexual harassment. That same day James O'Neal, an inmate, warned Farina that he and his friends would beat and sexually assault Farina unless Farina paid them.

After O'Neal repeated the threat the next day, Farina pushed the panic button in his cell, but the guard who answered simply told him to stop pushing the button. The following day, July 6, 2008, O'Neal once more threatened Farina, who pushed the panic button but this time got no response at all. Hours later O'Neal raped Farina in the shower and threatened to kill him and his family if he reported the assault. Once back in his cell Farina tried the panic button a third time and was told to cease by the guard who responded. O'Neal witnessed this exchange and repeated his threat to kill Farina if he reported the assault.

The next day, on July 7, O'Neal followed Farina to his cell, punched him in the head, and stole the food Farina had bought from the prison commissary. The sight of O'Neal with Farina's food caught the attention of a guard, and the guard brought Farina to see Lieutenant Myers, who said that he had heard that Farina was gambling with his food. Farina explained that O'Neal had raped him, that he feared for his life, and that he wanted to see a doctor. Myers told Farina to fill out a written request for medical treatment and placed him in segregation while investigating the gambling accusation. Before the day ended a nurse went to segregation and checked on Farina. Two days after that Farina met with Keith Anglin, then an assistant warden, and again reported the rape and asked to see a doctor. Anglin moved him to the receiving section, and another nurse visited Farina that afternoon. He was returned to the general population the next day, and during the following week, he met twice with a social worker and a psychologist.

On July 28, 2008, three weeks after he first reported the rape to Lieutenant Myers, Farina filed a prison grievance seeking treatment for tearing and bleeding caused by the rape, as well as an HIV test and psychiatric treatment. He never received an answer from administrators, and in August 2008 he was transferred to the Vandalia Correctional Center. On March 19, 2009, Farina filed another grievance, again seeking a blood test, but also contending that prison officials had failed to protect him from the rape. This grievance was returned as untimely to Farina, who appealed that decision to the Administrative Review Board a week later. In that appeal Farina maintained that he had good cause for not filing within the prescribed deadline: he had been "raped, intimidated, extorted, and then

transferred." The Board was unpersuaded and rejected Farina's appeal with the terse explanation that the grievance was untimely and already had been addressed.

Farina then filed this lawsuit. At screening, *see* 28 U.S.C. § 1915A, the district court initially allowed him to proceed with his claims that the defendants had failed to protect him and then denied him medical care. But after the defendants had been served and answered Farina's complaint, the court reviewed the matter again, *see id.* § 1915(e)(2)(B)(ii); *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003), and this time dismissed it. The court reasoned that Farina had pleaded himself out of court on his medical claim by attaching records from Danville showing that a nurse had seen him the same day he reported the rape and that a psychologist began treating him a week later. And Farina had failed to exhaust his administrative remedies for the assault claim, the court continued, because he did not file a grievance on that issue within 60 days of the incident.

Farina argues on appeal that the district court should not have inferred from the Danville medical records that he received treatment. He insists that the court was required to accept as true his allegation that he did not receive any treatment and attaches a letter from his current prison stating that his medical file contains no record of treatment between July and August 2008. That correspondence, whatever its significance, cannot undermine the documents that Farina incorporated into his complaint by attaching them. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). Those records are progress notes showing that a nurse met with Farina the day he reported the rape to Lieutenant Myers and that another nurse saw him two days later after he told Assistant Warden Anglin that he wanted medical treatment. None of the defendants are medical personnel, and what these records conclusively establish is that defendants Myers and Anglin must have acted promptly on Farina's requests for medical care and certainly did not delay, or prevent him from receiving, treatment. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009); *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005); *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996). If Farina means to imply that he received inadequate care during the nurses' visits or afterward, then the fault lies with the medical personnel who cared for him, not with the prison guards and administrators he sued.

We thus conclude that the district court properly dismissed this claim, though with one caveat: In his grievances Farina sought testing for HIV, which in Illinois must be provided to the victim of a prison sexual assault. *See* Ill. Dep't of Corrections Admin. Directive 04.01.301(6)(c). It is unclear whether Farina since has been tested, but if not, our decision here should not be read to foreclose him from seeking relief to prevent an unreasonable risk of serious harm to his future health. *See Helling v. McKinney*, 509 U.S. 25, 33-34 (1993); *Barnes v. Briley*, 420 F.3d 673, 675-76, 678 (7th Cir. 2005).

We now turn to Farina's claim about the rape. The district court dismissed this claim on the basis of 42 U.S.C. § 1997e(a), which requires inmates to exhaust their administrative remedies before filing suit in federal court. Farina maintains that he substantially complied with the administrative process when he filed his July 2008 grievance seeking medical treatment. When prison authorities ignored that particular grievance, he reasons, all remedies became unavailable. But that understanding is unsound. It is true that administrative remedies are "unavailable," and thus exhausted, if the underlying grievance went unanswered. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Farina, then, may have exhausted his administrative remedies concerning his medical claim. But that outcome did not extend to every objection he had about the conditions of his confinement. Farina still was required to file a timely grievance about the defendants' failure to protect him from the rape. *See Dixon v. Page*, 291 F.3d 485, 489-90 (7th Cir. 2002). Substantial compliance with administrative requirements does not, as he suggests, constitute exhaustion. *Booth v. Churner,* 532 U.S. 731, 739 (2001); *Dole*, 438 F.3d at 809.

We note, however, that the district court may have acted too quickly in dismissing Farina's claim for failure to exhaust. On the same day that the defendants filed their brief in this appeal, we issued our opinion in *Hurst v. Hantke*, 634 F.3d 409 (7th Cir. 2011), a case in which the aggrieved inmate, like Farina, had asserted to the Administrative Review Board that he had good cause for filing his grievance outside the 60-day deadline. *See* ILL. ADMIN. CODE tit. 20, § 504.810. The district court concluded that the inmate had failed to exhaust his administrative remedies because he did not present evidence of his good cause to the Board. But no regulation required him to submit evidence, and neither did the Board invite him to do so before it rejected the inmate's claim of good cause. *Hurst*, 634 F.3d at 410-11. And since the inmate "could not possibly" have complied with an undisclosed requirement, we explained, the administrative remedy was "unavailable." *Id.* at 412. Still, we affirmed the judgment because the inmate had failed to provide evidence of good cause to the district court at summary judgment.

Here the district court dismissed Farina's complaint without exploring whether, for purposes of § 1997e(a), the administrative remedy was made "unavailable" by the Board's failure to address Farina's assertion that he had good cause for filing late. But the oversight did not prejudice Farina, since the absence of good cause is apparent from his complaint. Farina cited to the Board as good cause for his late filing the threats and extortion that occurred at Danville. But both of Farina's claims arise from the same events, and although he clearly suffered intimidation at the hands of O'Neal, Farina nevertheless filed a grievance in July 2008 while at Danville, the location of the assault. That grievance, which Farina attached to his federal complaint, demonstrates that the administrative process was both available to him and actually used. Thus, we agree with the district court that Farina failed to exhaust the administrative remedies for his failure-to-protect claim.

Accordingly, the judgment is AFFIRMED.