NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2009[*]
Decided February 11, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1692

| | |
|---|---|
| ENOCH WILDER,<br> *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 04 CV 874 |
| RICK SUTTON, et al.,<br> *Defendants-Appellees.* | David Herndon,<br> *Chief Judge.* |

**O R D E R**

Enoch Wilder, a prisoner of Illinois and practitioner of Wicca, filed this lawsuit in November 2004 after almost two years of unanswered requests for access to specific religious items. Thirty more months then elapsed before the defendants finally moved for summary judgment on the ground that Wilder had turned to the courts without first exhausting his administrative remedies. Because the district court erred in accepting this contention, we vacate the judgment and remand for further proceedings.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

The pertinent facts are mostly undisputed, and where they are we recount them in the light most favorable to Wilder. Shortly after entering Pickneyville Correctional Center in January 2003, Wilder notified prison administrators that he wanted to practice Wicca but was told to direct those requests to Pickneyville's chaplain, Rick Sutton. Wilder then submitted numerous "request slips" asking Chaplain Sutton for access to religious items, including tarot cards, candles, and incense. Wilder says he received no response from Sutton, though Sutton says he told Wilder he could not have candles or incense in his cell. Wilder also directed requests to other administrators, but these produced no results. Finally, in November 2003, Wilder turned to the grievance process.

A uniform procedure governs grievances by state prisoners in Illinois. First the inmate must try to resolve the issue with a counselor. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005); ILL. ADMIN. CODE tit. 20, § 504.810(a). If this informal process does not get results, the prisoner may file a written grievance (on a particular form) "within sixty days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." ILL. ADMIN. CODE tit. 20, § 504.810(a). A Grievance Officer reviews the formal submission and makes a recommendation to the institution's warden. *Id.* § 504.830(d). An adverse decision may be challenged by addressing an administrative appeal to the Administrative Review Board (ARB), which then makes a recommendation to the Director of the Department of Corrections for final decision. *Id.* § 504.850(a), (b), (f).

On November 19, 2003, Wilder completed a "Committed Person's Grievance," the form prescribed by the prison system for inmate grievances. That document details Wilder's attempts to secure approval "to order my ritual utensils so I can properly worship my God/dess." Wilder's counselor returned the form to him with the explanation that Chaplain Sutton had said he needed a complete, verified list detailing the items he needed to practice Wicca. How Wilder's grievance form got into the hands of his counselor instead of the Grievance Officer is not explained in the record; there is no evidence that Wilder did not submit his form in the proper manner for processing. We don't know why it was returned; all we know is what the counselor told Wilder.

Wilder, though, followed his counselor's direction and sought documentation from his religious leader. The Rev. Paul V. Beyerl of the Rowan Tree Church in Kirkland, Washington, sent Wilder a list of items broken down between those deemed "very desirable for the working of our primary religious ceremonies," others seen as "very important for the practice and study of our religion," and a third group which included desirable items that "may be considered security risks." Wilder sent this list to Chaplain Sutton, who forwarded it to the Religious Practice Advisory Board, which advises the Department of Corrections on religious matters. *Nelson v. Miller*, No. 03-254-CJP, 2008 WL 904735, at *3 n.3 (S.D. Ill. Mar. 31, 2008); ILL. ADMIN. CODE tit. 20, § 425.40; Ill. Dep't of Corr. Admin. Dir. 04.25.101.

Wilder heard nothing more, and despite repeatedly asking Chaplain Sutton about the status of his request, received no answer. So on February 8, 2004, he completed a second "Committed Person's Grievance" seeking the same basic relief. Once again there is no evidence suggesting that Wilder did not deliver his grievance form for processing in the manner required, but again the form was promptly returned by the counselor. This time the counselor explained that Chaplain Sutton was still waiting for advice from the advisory board and admonished, "You should have sent him this list *before* you wrote a grievance."

Since the holdup seemed to be with the advisory board, Wilder packaged copies of his November 19 and February 8 grievance forms and sent them to that body as evidence that he tried to resolve the issue internally at Pickneyville. But his package ended up at the Administrative Review Board, which processed the contents as if Wilder had submitted an administrative appeal from an adverse decision on a single grievance. The review board, which did not know that Wilder's two grievance forms had been returned unprocessed, rejected his "appeal" on the ground that he neglected to include the Grievance Officer's recommendation or the warden's decision.

Wilder did not become aware of the Administrative Review Board's ruling until it reached him in May 2004. Meanwhile, on March 15, Wilder had also taken copies of his November and February grievance forms directly to the institutional Grievance Officer. The Grievance Officer processed the copies as an entirely new grievance and recommended that it be denied because Chaplain Sutton was still awaiting guidance from the Religious Practices Advisory Board. Pickneyville's warden accepted the Grievance Officer's recommendation two days later. Wilder filed an administrative appeal by forwarding the Grievance Officer's recommendation and the warden's decision to the Administrative Review Board, which on July 19 rejected Wilder's appeal on a different ground. According to the board, the March 15 grievance was untimely because it concerned events dating back to November 2003 but was not submitted until more than sixty days after those events.

Four months later, Wilder sued. His complaint, which alleges claims under the First Amendment; the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5; and state law, names as defendants Chaplain Sutton, three administrators at Pickneyville, the head of the Religious Practices Advisory Board, and the chairperson of the Administrative Review Board. Acting on a magistrate judge's recommendation, the district court granted summary judgment for the defendants on the ground that Wilder had not exhausted his administrative remedies before filing suit. The court reasoned that "Wilder's grievances were premature and that he did not properly follow the required procedures." The district court, however, did not attempt to reconcile this conclusion with the view of the Administrative Review Board, which said that Wilder's mistake was acting *too late*, not too early.

On appeal the defendants bypass the district court's analysis and seek to defend the view of the Administrative Review Board that Wilder did not submit a timely grievance challenging the denial of items necessary to practice his religion. Wilder, in turn, insists that the evidence establishes that he fully exhausted the administrative remedies available to him. Our review is de novo. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

An inmate may not bring suit concerning prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But failure to exhaust is an affirmative defense, and it was up to the defendants to establish that Wilder had available remedies that were not exhausted. *See Jones v. Bock*, 549 U.S. 199, 212 (2007); *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir.) *cert. denied,* 129 S. Ct. 417 (2008). Our cases identify two considerations in evaluating whether a prisoner's claim is exhausted: whether remedies were realistically available to the prisoner, and whether those remedies were exhausted. A proper understanding of the first of these considerations shows why the position taken by the defendants is untenable.

Inmates are not required to exhaust all administrative remedies—only those that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006); *Kaba*, 458 F.3d at 684. The "availability" of a remedy is not a matter of what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue. *Kaba*, 458 F.3d at 684. In *Kaba* we explained several ways that an administrative process might not be available to a prisoner. 458 F.3d at 684. For example, if grievances must be filed on a particular form, but the forms are not provided, then there is no "available" remedy, despite its hypothetical possibility. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). Similarly, threatening a prisoner with violence for attempting to use an administrative process makes that process unavailable. *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). Or if a prisoner is told to wait to file a grievance, and that wait makes the claim untimely, then that too will have made the process unavailable. *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002). Finally, we have held that not responding to a prisoner's grievance, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002), or engaging in affirmative misconduct, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), will also make the process unavailable. Our approach, then, has been to focus on whether the plaintiff did all he could to avail himself of the administrative process. If he followed the prescribed steps and could do nothing more, then available remedies were exhausted. *Id.* at 811.

The defendants argue that Wilder failed to exhaust because, they insist, he never submitted a "formal" grievance within sixty days of the events he complains about. In November 2003, the argument goes, Wilder complained "informally" to his counselor about his lack of access to Wiccan utensils but did not tender a "formal" grievance until March 2004. But nothing in the record supports this contention. The defendants point to

nothing—not a regulation, not an administrative directive, not even an affidavit from a prison administrator—to suggest that some grievances are "informal" (and thus apparently can be ignored) while others are "formal" (and require a response). As Wilder explains (without contradiction from the defendants), he had no control over whether the grievances he submitted on the prescribed forms in November 2003 and again in February 2004 would be processed as "formal" or, as his were, returned as "informal." The Illinois Administrative Code defines the requirements for a grievance: it must be written on a prescribed form, and it must provide sufficient detail regarding the inmate's problem. ILL. ADMIN. CODE tit. 20, § 504.810. The forms Wilder submitted in November and February satisfied both conditions, and the defendants have never contended—and certainly did not produce any evidence—that Wilder did not tender these forms according to the required procedure. The only conclusion to be drawn from this record is that prison administrators refused to act on what, by all appearances, are grievances that should have been processed by the Grievance Officer but were not.

We thus reject the assertion that Wilder did not submit a grievance until March 2004; that was his *third*, not his first. And so what the undisputed evidence establishes is that personnel at Pickneyville received but failed to act on one grievance in November 2003 and a second in February 2004, and that inaction—whatever the explanation—means that Wilder had no "available" remedy to exhaust. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Lewis*, 300 F.3d at 833.

Wilder cannot be faulted for not knowing how best to respond to the prison authorities' inaction. *Dole*, 438 F.3d at 811. Despite Wilder's three grievances, the defendants argue that the Department of Corrections was deprived of the opportunity to resolve his issue because Wilder filed suit without first exhausting a *fourth* grievance concerning the absence of a response from the Religious Practices Advisory Board. The defendants repeatedly contend that they had no authority to address Wilder's requests for religious accommodation because, they insist, it is the advisory board that decides the fate of requests for "non-traditional" religious items. But that contention is not supported by any evidence in the record, and the ostensible authority the defendants do cite for this proposition directly contradicts their conclusion: this religious *advisory* board makes recommendations to the Department of Corrections—it does not dictate to department officials. *See* ILL. ADMIN. CODE tit. 20, § 425.40(b);[1] Ill. Dep't of Corr. Admin. Dir. 04.25.01,

---

[1] "The [Religious Practices Advisory] Board shall, among other matters:

(continued...)

§ E.[2]  And the defendants make no attempt to explain what different steps Wilder should have taken to address his concerns about the advisory board.  This is unsurprising because the Illinois Administrative Code specifically provides that matters concerning religious accommodation should be addressed through the regular grievance process.  ILL. ADMIN. CODE tit. 20, § 425.120.  In the absence of more specific requirements in the grievance procedure, the exhaustion requirement is modest: prisoners must only put responsible persons on notice about the conditions about which they are complaining.  *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  Wilder notified the responsible prison officials, in each of his grievances, that he desired access to religious effects, and it was not Wilder's obligation to be concerned with the internal decision-making processes thwarting that request.  Ultimately it was the warden's duty to decide what religious items Wilder could gain access to, and all of Wilder's grievances were directed appropriately to that end.

As we've said, the prison's refusal to act on the grievances Wilder submitted in November 2003 and February 2004 rendered the administrative process unavailable, so § 1997e(a) is no bar to Wilder's lawsuit.  But another point bears mention.  The defendants all along have asserted that the first two grievances did not count, and that only the March 2004 grievance was "formal."  And that grievance, the defendants say, was too late because it was a copy of what Wilder wrote the previous November and thus concerned events that

---

[1](...continued)
> 1) Provide guidance to the Department regarding religious activities.
> 2) Review and make recommendations regarding designated:
>> A) Religious grievances filed by committed persons;
>> B) Requests from committed persons for religious diets, non-traditional religious symbols, headgear, clothing, and other religious items;
>> C) Requests from committed persons for religious activities not currently offered at the correctional facility and for religious activities permitted under Section 425.60(f);
>> D) Requests from committed persons for relief from a work assignment or institutional program for specific religious reasons; and
>> E) Issues involving the training, screening, and reimbursement of religious volunteers."

[2] "The Director shall appoint a Religious Practice Advisory Board to provide guidance to the Department regarding religious activities, to recommend changes in policies relating to religion, and to review and make recommendations to the Director regarding religious issues in accordance with Department Rule 425."

were more than sixty days old.  This untimeliness contention is frivolous.  Wilder's grievance, whether dated in November or February or March, related to a basic concern—his unanswered requests to worship with Wiccan utensils—and that concern is not a particular "incident" but a continuing wrong.  *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (describing prison's alleged violation of RLUIPA as a continuing violation).  Wilder does not assert that he was prevented from worshiping on a particular day in November 2003; his grievances recount his long-running effort to obtain permission to acquire items he deemed essential to practice his religion.  Moreover, he missed several Sabbats between the filing of his first grievance in November and the Grievance Officer's response to his third grievance in March.  (There are eight Sabbats in the Wiccan calendar, approximately six weeks apart.  *Gladson v. Iowa Dep't of Corr.*, No. 07-3528, 2009 WL 36813, at *1 (8th Cir. Jan. 8, 2009); David Rittgers, *These Dishonored Dead: Veteran Memorials and Religious Preferences*, 5 FIRST AMENDMENT L. REV. 400, 404 (2007)).  Each missed opportunity to worship gives rise to a separate complaint, and so whether Wilder filed a grievance in November, February, or March, he was within sixty days of an incident underlying his complaint.

The judgment is VACATED, and the case is REMANDED for further procedings.