In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2903

PETER POOLE III,

*Plaintiff-Appellant,*

*v.*

DEBBIE ISAACS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-1070-GPM—**G. Patrick Murphy**, *Judge.*

SUBMITTED NOVEMBER 29, 2012*—DECIDED DECEMBER 28, 2012

Before EASTERBROOK, *Chief Judge,* and WOOD and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Peter Poole, an Illinois prisoner, firmly believes that a required $2 co-payment for dental care furnished at the Big Muddy River Correctional Center violates his rights under the Eighth Amend-

---

* After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

ment to the federal Constitution. After a lengthy period during which he refused to make the payment, he finally capitulated and promptly received the necessary care. Later, however, he filed this case under 42 U.S.C. § 1983 against several prison officials, asserting that his constitutional rights had been violated. Poole's complaint frivolously accuses the defendants of "committing strong arm robbery" against a "captive market of inmates." After screening the complaint as required by 28 U.S.C. § 1915A, the district court dismissed Poole's claims against several defendants with prejudice, but it allowed the action to proceed against Debbie Isaacs, the health-care administrator at Big Muddy, because Poole alleged that he "didn't have any money" for the co-payment. That allegation was false, and thus after discovery the district court granted summary judgment for Isaacs. Poole appeals.

Most of the material evidence presented with the summary judgment motions was undisputed. At the time Poole was incarcerated at Big Muddy, he had serious dental problems. He had a routine examination with a dentist on September 17, 2007. Ordinarily he would have had to wait two years for a new exam, but on July 29, 2008, he was examined by Dr. Malcharek, who is a dentist employed by Wexford Health Services, a private company that furnishes healthcare services at the prison. Dr. Malcharek (who was not named as a defendant) noted from Poole's dental chart that on an earlier occasion a colleague had recommended extracting one tooth and filling two others. Dr. Malcharek offered to schedule those procedures, but Poole balked when told that he first had to authorize withdrawal of the

$2 co-payment from his inmate trust account. Poole complained to healthcare administrator Isaacs about the need to pay; Isaacs was responsible for monitoring Wexford's compliance with administrative directives governing medical care. In Poole's opinion, the July 2008 visit should have been categorized as a follow-up to the September 2007 appointment; if that were correct, the 2008 visit would have been exempt from the co-payment requirement. See 730 ILCS 5/3-6-2(f) (2006). Issacs, however, agreed with Dr. Malcharek that the 2008 visit was not a follow-up and that payment was required. Poole had more than enough money in his trust account to cover that modest sum, but rather than pay, he declined treatment and filed a grievance against Isaacs and the Wexford dentists. By refusing to provide free dental care, Poole argued, they had caused him to suffer headaches as well as extreme tooth pain that made eating difficult. His grievance was denied, and the decision was upheld through both levels of administrative appeal.

The grievance process was complete in April 2009, but after that, Poole restarted the cycle. In July 2009 he was examined by Dr. Dennis Meyers, who agreed with Dr. Malcharek that work needed to be done, and also that it could not proceed without a co-payment. Poole still had adequate funds in his trust account, but for several months he continued stubbornly to maintain that he was exempt from the co-payment. Finally, in October 2009, he authorized the withdrawal of the $2 and received treatment.

Poole then sued. He named as defendants not only Isaacs but also Wexford, the warden at Big Muddy, and

the director of the Department of Corrections. (Poole also named Dr. Meyers but voluntarily dismissed him.) The district court recruited counsel to assist Poole in litigating his claim against Isaacs, but it dismissed the other defendants because Poole failed to allege their personal involvement in the alleged denial of care. Later the district court granted summary judgment to Isaacs, reasoning that the co-payment plan was not unconstitutional, and even if it was, Isaacs was entitled to qualified immunity because she acted reasonably given the law at the time.

Under the regulation in force during the relevant period, the Department of Corrections typically required a $2 co-payment (now $5) from inmates whose trust-fund balance was $2 or greater either at the time medical services were provided or during the preceding 60 days ("or since arrival at the offender's current facility, whichever occurred most recently"). See 730 ILCS 5/3-6-2(f) (2006); 730 ILCS 5/3-6-2(f) (2010); ILL. ADMIN. CODE, tit. 20, § 415.30(g)(3) (2007). Poole concedes that he was able to pay that amount. He also seems to acknowledge that the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care.

In fact, that proposition is by now well established. In *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983), the Supreme Court looked at one aspect of the question. The specific issue before the Court was whether a state entity (there a municipality) could be

compelled to reimburse the provider of emergency medical services. The state supreme court held that the answer was yes; otherwise, it feared, persons in police custody might be denied necessary services in violation of the Eighth Amendment. The Supreme Court began by noting that the relevant constitutional provision for this situation was the Due Process Clause, not the Eighth Amendment. Ultimately it held that "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care." 463 U.S. at 245. In a footnote, the Court reserved the question now before us: "Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him." *Id.* n. 7.

Other courts have taken the next step, however. For example, in *Reynolds v. Wagner,* 128 F.3d 166 (3d Cir. 1997), the Third Circuit squarely rejected the argument that "a program that requires that inmates with adequate resources pay a small portion of their medical care" automatically violates the Constitution. *Id.* at 174; accord, *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418-19 (3d Cir. 2000). See also *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985); *Negron v. Gillespie*, 111 P.3d 556, 558-59 (Colo. Ct. App. 2005); *Mourning v. Correctional Med. Servs., (CMS) of St. Louis, Mo.*, 692 A.2d 529, 539 (N.J. App. Div. 1997). In our view, these cases are well reasoned and consistent with the general rationale of *City of Revere.* We thus join

our fellow courts in holding that the imposition of a modest fee for medical services, standing alone, does not violate the Constitution. To the extent that Poole is arguing for some form of *per se* unconstitutionality, we reject his position. And this is not a case in which the required payment exceeds the inmate's resources. In fact, had Poole been truly indigent, he would have been exempt from the requirement. The Illinois statute contains a number of exemptions from the co-payment requirement, including one for people with chronic illnesses, one for follow-up visits, one for those meeting the statute's definition of indigency, and one for juvenile offenders. 730 ILCS 5/3-6-2(f). We have no occasion either to comment on these particular exemptions or to speculate whether others might be needed. It is enough to say that Poole was not deprived of dental services for reasons beyond his control.

Poole does, however, urge that he should have been given the benefit of one of those exemptions: the one for a follow-up visit ordered by a physician. But that is just a state-law question that cannot be pursued under § 1983. *E.g.*, *Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)); *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 101 (3d Cir. 2011).

Isaacs did not deny dental care for Poole, nor is she to blame for the delay in treatment. Poole had sufficient funds in his trust fund account but opted to refuse treatment rather than part with his money. Even though he was in pain until he received treatment, the delay in

receiving care was of his own making. For that reason the district court correctly ruled that Isaacs was entitled to summary judgment in her favor and that Poole failed to state a claim against the other defendants.

We have reviewed Poole's remaining arguments, and none has merit. Indeed, both the original lawsuit and this appeal are so lacking in merit that they warrant the imposition of two strikes under 28 U.S.C. § 1915(g). The judgment of the district court is AFFIRMED.