**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 22, 2013[*]
Decided March 25, 2013

**Before**

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3262

| | |
|---|---|
| ANTHONY CONLEY, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 10-2013 |
| | |
| KEITH ANGLIN, *et al.,* | Harold A. Baker, |
| *Defendants-Appellee*s. | *Judge.* |

**O R D E R**

Anthony Conley is incarcerated at the Danville Correctional Center in Illinois. In this suit under 42 U.S.C. § 1983, he claims that Danville administrators and medical staff were deliberately indifferent to his serious medical needs. The district court granted summary judgment for the defendants on the ground that Mr. Conley's failure to exhaust his administrative remedies is undisputed. *See* 42 U.S.C. §1997e(a). That ruling is problematic,

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

but any error is harmless because Mr. Conley's amended complaint fails to state a plausible claim of deliberate indifference.

Named as defendants are Keith Anglin, the warden at Danville; Mary Miller, the Health Care Administrator; Bashirahmed Ameji, a contract physician who no longer works at the prison; and Christina Miles, a nurse who was never served with process. (Mr. Conley 's amended complaint also identifies as defendants an assistant warden and the former director of nursing at Danville, but his allegations against them are too trivial for discussion.) Mr. Conley, who is diabetic and asthmatic, alleges that he went to the infirmary to give a routine  blood sample but Ms. Miles botched the procedure, causing an infection and blood clot that led to several heart attacks. Afterward, Mr. Conley continues, Dr. Ameji covered for Ms. Miles by falsifying his medical record to reflect normal EKG readings. And though his arm was swollen from the infection and he was complaining of chest pains, says Mr. Conley, the defendants would not send him to the hospital until he authorized a $2 co-payment. And later, Mr. Conley concludes, Ms. Miller failed to intervene when a nurse (who is not a defendant) delayed his receipt of orthopedic shoes prescribed because of his diabetes and also caused him to go a month without medication prescribed for high cholesterol. About Warden Anglin, Mr. Conley says only that he "took [a]ll permits for special order shoes."

These events occurred during the period from February 2008 through May 2009. At summary judgment, in addressing § 1997e(a), the parties focused on grievances that Mr. Conley submitted in March 2008, July 2008, and June 2009. Dr. Ameji argued that Mr. Conley had failed to exhaust as to him because his name does not appear in the March 2008 grievance, which is the only one of the three that concerns events involving the doctor. Moreover, Dr. Ameji contended, Mr. Conley did not timely appeal that grievance and also expanded its factual allegations improperly after it had been denied. For their part, both Mr. Anglin and Ms. Miller, the warden and Health Care Administrator, insisted that none of Mr. Conley's three grievances concerns his orthopedic shoes. Warden Anglin also noted that he is not mentioned in the June 2009 grievance about Mr. Conley's cholesterol medication. Ms. Miller's name is *prominent* in that grievance, but she ignored it. Except as noted, the evidence adduced at summary judgment about Mr. Conley's three grievances is undisputed.

Ms. Miles, the nurse, drew blood from Mr. Conley's arm in late February 2008 for a lab test. A few days later he submitted the first of his three grievances. Mr. Conley complained that Ms. Miles had performed the procedure poorly, causing pain and an infection. He asked that she be given remedial training in drawing blood from diabetic inmates and explained that he decided to submit the grievance "in order to cover myself in case there is something major wrong with my arm." No reference is made to the heart or to

Dr. Ameji. The grievance counselor referred the matter to Danville's director of nursing, who reported that Mr. Conley's infection had been treated even before he filed the grievance.

On that basis the grievance officer deemed the matter moot, and Warden Anglin concurred. Warden Anglin denied the grievance on May 1 but apparently withheld that written decision until May 6, the date Mr. Conley signed it indicating his intent to appeal. Mr. Conley sent a copy of the rejected grievance to the Administrative Review Board, though first he padded its factual narrative with additional allegations, including that the blood draw had caused a clot affecting his heart. Dr. Ameji still is not mentioned. In Mr. Conley's affidavit submitted at summary judgment, he attests that he placed his appeal in the prison mail bag on May 27. The ARB received it on Monday, June 2—32 days after the date of Warden Anglin's decision—and denied it as untimely.

About a month later, in July 2008, Mr. Conley submitted the second grievance, this time asserting that Dr. Ameji would not renew his prescription for an inhaler. Once again the grievance counselor sent the matter to the director of nursing, who responded that another inhaler had been prescribed for Mr. Conley. The grievance counselor and Warden Anglin concluded that this grievance too was moot. The ARB upheld that decision.

Then in June 2009, Mr. Conley submitted the third grievance. He explained that his cholesterol medication had run out but on May 1 a "low level" nurse (who is not a defendant) blocked him from seeing the physician's assistant who could renew that prescription. That same nurse, Mr. Conley continued, interfered again on May 21 when he wanted the physician's assistant to help him obtain his orthopedic shoes. Mr. Conley says that Ms. Miller was present during these encounters yet did nothing. The grievance counselor sought input from Ms. Miller, who replied that Mr. Conley's special shoes had been ordered and added, inexplicably, that Mr. Conley would see an optometrist as soon as the doctor scheduled a visit. Ms. Miller said nothing about Mr. Conley's cholesterol medication.

As before, the grievance counselor and Warden Anglin declared the matter moot, despite Ms. Miller's silence about Mr. Conley's cholesterol medication. In appealing that decision to the ARB, Mr. Conley criticized Ms. Miller for mentioning the eye doctor since eye care is not a subject of his grievance. The ARB upheld the warden's decision, but only after conducting its own investigation about the cholesterol medication. The ARB concluded that Mr. Conley had gone without his medication for 30 days only because he missed the deadline for his monthly refill and thus had to wait until the next order date.

In granting summary judgment for the defendants, the district court accepted Dr. Ameji's argument that he must be dismissed because his name does not appear in the March 2008 grievance. Moreover, the court said, Mr. Conley did not timely appeal the denial of that grievance. This second reason is also the sole explanation for dismissing Ms. Miles, the nurse who drew Mr. Conley's blood, even though the court recognized that Mr. Conley (who was not proceeding in forma pauperis) did not even serve Ms. Miles with process. As for Warden Anglin, the district court also accepted his contention that he must be dismissed because Mr. Conley did not mention him in the June 2009 grievance about the cholesterol medication. Moreover, the court reasoned, the warden could not be liable for deferring to medical personnel. Similarly, the district court accepted Warden Anglin's contention, which Ms. Miller joined, that Mr. Conley had not submitted a grievance concerning the denial of orthopedic shoes at Danville. Finally, as to Ms. Miller, the district court seemed to appreciate that Mr. Conley, in his June 2009 grievance, did link her to the alleged denial of his cholesterol medication, but the court concluded that Mr. Conley had failed to exhaust his administrative remedies even as to Ms. Miller.

On appeal Mr. Conley argues that the district court erred in granting summary judgment on the ground of failure to exhaust administrative remedies. Prisoners must exhaust administrative remedies before filing suit concerning prison conditions, 42 U.S.C. § 1997e(a), which means complying with a prison's rules for processing grievances, *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). But proving compliance is not the inmate's burden; a defendant asserting a failure to exhaust has the burden of establishing this affirmative defense. *Dole v. Chandler*, 438 F.3d 804, 809, 813 (7th Cir. 2006); *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

As we see the record, there are several problems with the district court's analysis. For one, Mr. Conley did name Ms. Miller in his June 2009 grievance and said that she stood by and allowed the "low level" nurse to thwart his access to the physician's assistant who could refill his cholesterol medication. Likewise, the court's statement that Mr. Conley never submitted a grievance about being denied his orthopedic shoes at Danville is mistaken; Mr. Conley makes that very claim in his June 2009 grievance, again mentioning Ms. Miller by name. Moreover, in this case the court overstated the significance of the names Mr. Conley included or omitted from his grievances. ' By statute Illinois ostensibly mandates that grievances include the name or a description of the persons involved in the complaint, *see* ILL. ADMIN. CODE tit. 20, § 504.810; *Maddox*, 655 F.3d at 721, but the Department of Corrections has been slow to make that requirement explicit on the forms it gives inmates. We have held that when a prisoner uses a grievance form asking only for a "Brief Summary of Grievance," like the forms that Danville administrators gave Mr. Conley, then the omission of names or identifying information does not necessarily mean that the prisoner

failed to exhaust his administrative remedies so long as he otherwise followed the grievance process. *Maddox*, 655 F.3d at 721–22. The grievances here, like the grievance in *Maddox*, gave prison administrators a fair opportunity to address Mr. Conley's complaints, with the possible exception of his allegation of wrongdoing by Dr. Ameji. *See id.* at 722.

Morever, the defendants did not establish that Mr. Conley failed to timely appeal the denial of his March 2008 grievance. An untimely administrative appeal may lead to dismissal for failure to exhaust. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Under Illinois rules, the offender must "appeal in writing to the Director within 30 days after the date of the decision." ILL. ADMIN. CODE tit. 20, § 504.850. Here, Mr. Conley attests that he submitted his administrative appeal by placing it in the mail at Danville on May 27, 2008, within the 30-day period ending on Saturday, May 31. The ARB stamped the document as "received" on Monday, June 2, but the defendants submitted no evidence to establish that mail received by the ARB on a Saturday would be opened and stamped "received" before Monday. And though the defendants would like us to presume that § 504.850 and the ARB's own procedures do not recognize the "mailbox rule," they offered no support (and still don't) for the proposition.

A similar answer applies to the defendants' argument that Mr. Conley failed to properly exhaust his administrative remedies by adding more factual allegations to the copies of the grievances he sent to the ARB. Mr. Conley was not exactly coy; he called the new allegations a "continuation" and included dates alerting the reader that he was describing events occurring after he first submitted the grievance. The important point, though, is that the defendants cite to no case authority or prison regulation banning the inclusion of additional facts in an administrative appeal. Certainly the ARB never relied upon this purported procedural defect in rejecting Mr. Conley's appeals, precluding the defendants from doing so now. *See Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

Yet despite these concerns about the basis given by the district judge for dismissing Mr. Conley's lawsuit, we may affirm the judgment on other grounds. *See Sonnleitner v. York*, 304 F.3d 704, 717 n.8 (7th Cir. 2002). Mr. Conley's complaint fails to state a plausible claim of deliberate indifference against any of these defendants. As for Ms. Miles, the nurse, even if her handling of a single blood draw could support a claim of deliberate indifference, Mr. Conley never served her with process. He argues that Ms. Miles effectively was "served" when the Department of Corrections identified her during discovery (Mr. Conley had sued her as "Nurse Tina"), but it was Mr. Conley's responsibility to properly serve Ms. Miles even if she had actual notice that the suit was pending. *See* FED. R. CIV. P. 4(c)(1); *Homer v. Jones-Bey*, 415 F.3d 748, 758 (7th Cir. 2005).

Mr. Conley has also failed to state a claim for deliberate indifference against Dr. Ameji. Mr. Conley does not allege that he was denied medical care because of Dr. Ameji's alleged falsification of medical records or because the doctor refused to transport him to a hospital until he paid a co-payment. Nor does Mr. Conley allege that he lacked the funds to pay, and, in fact, the district court denied him leave to proceed in forma pauperis because his trust account had a "substantial" balance. It is not deliberate indifference for prison medical professionals to insist that a prisoner pay the required co-payment before receiving care when he has the ability to pay. *Poole v. Isaacs,* 703 F.3d 1024, 1027 (7th Cir. 2012).

Finally, with respect to Warden Anglin and Ms. Miller, the complaint includes no allegations sufficiently linking them to the blood draw and its aftermath, or to Mr. Conley's difficulty in obtaining his medication and shoes. Non-medical administrators generally are entitled to defer to the judgment of health professionals, s*ee Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *Hayes v. Snyder,* 546 F.3d 516, 527–28 (7th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006); *Greeno v. Daley,* 414 F.3d 645, 655–56 (7th Cir.2005), and Mr. Conley does not contend that Warden Anglin or Ms. Miller were involved other than in processing his grievances. He does say that Warden Anglin handles orders for special shoes, but it was the "low level" nurse, not Warden Anglin, who allegedly stopped Mr. Conley from receiving his shoes. Mr. Conley also alleges that Ms. Miller "stood by" when that nurse stopped him from seeing the physician's assistant to ask for more medication and his shoes, but that allegation is too thin to plausibly implicate Ms. Miller. Mr. Conley does not allege that Ms. Miller participated in his discussion with the nurse, or approved her actions, or even that Ms. Miller was in close enough proximity to hear what he was asking. Her silence is not enough from which to infer personal involvement.

Accordingly, the judgment of the district court is AFFIRMED.