Ulysses WILLIAMS, Plaintiff,

v.

John R. BALDWIN, et al., Defendants.

**Case No: 16 C 50055**

United States District Court,
N.D. Illinois.

Signed 03/06/2017

Jin-Ho Chung, Laura J. Miller, Amanda C. Antholt, Equip for Equality, Chicago, IL, for Plaintiff.

Summer Muazaz Hallaj, Office of the Illinois Attorney General, Chicago, IL, for Defendants.

## ORDER

FREDERICK J. KAPALA, District Judge

Defendants' motion for summary judgment [23] is granted. This case is closed.

## STATEMENT

Plaintiff, Ulysses Williams, a legally blind prisoner currently incarcerated at Dixon Correctional Center ("Dixon"), has brought this civil rights action against various employees of the Illinois Department of Corrections ("IDOC") alleging violations of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., and the Fourteenth Amendment. In his amended complaint, plaintiff alleges that IDOC has refused to provide him with an audio format of the Test of Adult Basic Education ("TABE test"), which prevents him from participating in other educational and vocational programs. Currently before the court is defendants' motion for summary judgment, in which defendants argue that plaintiff has failed to exhaust his administrative remedies prior to filing this suit. For the reasons stated below, the motion for summary judgment is granted.

## I. BACKGROUND [1]

Plaintiff has a degenerative eye disease that causes severe vision impairment and eventual blindness, and this condition requires him to obtain assistance for navigating, reading, and writing. On December 24, 2013, plaintiff was transferred by IDOC to Dixon. Shortly thereafter, plaintiff was called to Dixon's school building along with other newly arrived prisoners to take the TABE test. Plaintiff told the test administrator that he was legally blind and could not see the test in the written format provided. As a result, plaintiff was told to return to his housing unit and that he would be called back another time. Without a TABE test score, plaintiff is unable to get on the wait list to work at Dixon Industries, to take educational classes, or to take the GED.

On February 6, 2014, plaintiff submitted an Offender Request form which noted, among other things, that he was "visually impaired—need ... special testing ABE, want to earn GED." The request was referred to Dixon's ADA Coordinator, Troy Hendrix. On February 20, 2014, Hendrix responded to plaintiff via a written memorandum detailing various accommodations that were being made for plaintiff's disabil-

---

1. The background facts are taken from the parties' Local Rule 56.1 statements of fact, as well as the responses and attachments there- to, and unless otherwise noted are either undisputed or viewed in the light most favorable to plaintiff.

ity, such as allowing him to participate in the "Talking Book and Braille Service" and assigning an "Ambulatory Aide" to assist him. In addition, Hendrix noted that he had "contacted [Jenny] Wheat, EFA and her office will implement appropriate accommodations in order to assist you in taking the TABE test."

Several months later, plaintiff began writing a number of letters to various prison officials either requesting various accommodations for his disability or inquiring about educational opportunities. For example, on August 25, 2014, plaintiff sent a letter[2] to Hendrix asking what was "taking so long with school and brail lessons," and on September 30, 2014, he sent another letter to Hendrix "in regards to school and also the A.D.A. accessories need to accomodate me with myself while I'm here at Dixon." Some of the letters plaintiff sent specifically referenced the TABE test, such as an October 14, 2014 letter to Jenny Wheat, the Education Facility Administrator, in which plaintiff stated, "I am legally blind and requesting from you to be enrolled in school for tabe test and G.E.D. also to learn braille," and a November 1, 2014 letter to Hendrix, in which plaintiff wanted "to find out the status of my attending the Tabe test, GED Educational programs."

On November 11, 2014, plaintiff sent another letter to Hendrix concerning "Tabe test, GED, Educational programs, THREE to nine Ambulatory Aid." In the letter, plaintiff asked about "the status of my attending, The Tabe test, GED Educational programs." Plaintiff also mentioned his need for an ambulatory aide from 3 p.m. to 9 p.m. because of his "problem navigating at night." There is no indication in the record whether any of plaintiff's letters were ever received or generated a response.[3]

On December 1, 2014, Chris Barnhart was appointed as the ADA Coordinator for Dixon, and all inmates were instructed that "[a]ll ADA issues and any Requests for Accommodations based on disability are to be directed to Mr. Barnhart." On December 9, 2014, plaintiff spoke with Barnhart about the last letter he had sent to Hendrix and specifically asked about getting into school.[4] Barnhart told plaintiff that he would help with the request for an ambulatory aide, but he would not promise anything about school because the waiting list was about five years. The next day, December 10, 2014, Barnhart sent an email to Jenny Wheat about plaintiff, which stated:

> I/M Williams . . . with a MSR date of 7-16-23 is asking about getting involved with educational programming (TABE test, GED). He has been incarcerated for about a year now, 11-22-13. Will he need to wait closer to his MSR date to be involved? I don't have a counselor profile on OTS yet . . . I am assuming he has already taken the TABE test?

Later that day, Barnhart sent another email to Ginger Davis, who is presumably some sort of prison official at Dixon, indi-

---

**2.** Throughout this order, the court has quoted plaintiff's various letters and other written submissions verbatim without correcting any misspellings or otherwise indicating any errors that exist in the original.

**3.** On November 11, 2014, plaintiff also sent a similar letter to LaShonda Cameron, the Assistant Warden of Programs at Dixon, referencing the TABE test, among other things, and indicating that he had "been here for

eleven months and I still haven't taken a tabe test or been enrolled in any educational programs."

**4.** There is a minor dispute about this fact, and it appears that the part of the record plaintiff is attempting to rely on (Bates no. UW00024) has not been provided to the court. Nevertheless, the court will assume that plaintiff's account of his December 9 conversation with Barnhart is accurate.

cating that plaintiff "has requested accommodations via ADA for school programming," and that Jenny Wheat "can likely provide assistance" if Davis could verify that plaintiff "has a vision condition that renders him legally blind."

Meanwhile, on December 17, 2014, plaintiff filed Grievance # 15-1-1, the only written grievance at issue in this case. The "Summary of Grievance" section of the form states:

> Grievant filies this 'Grievance' regarding "American/w Disability Act; Unprofessional Staff Conduct; & Cruel And Unusual Punishment". AS Grievant is legally blind and is constantly being denied/ignored various equally protected human rights & conditions (3 to 9 Ambalatory Aid Worker; Educational Course (Classes For The Brail); Guiding (Walking) Cane; & Auxillary Aids (Talking Watch)).
>
> On or about Nov. 11, 2014 Grievant writiten letters to 'Caseworker Supervisor, Troy Hendrix & ADA Coordinator; also, Educational Teacher, Ms. Bailey concerning the aforemention matters he's having; yet, to no avail has anything being done/nor has neither of the (2) parties respnded back.

As the ADA Coordinator, Barnhart was responsible for reviewing plaintiff's grievance since it was seeking various accommodations for his disability. In his response dated January 6, 2014,[5] Barnhart identified four requests that had been made by plaintiff in his written grievance:

1.) an ambulatory aide assigned to him from 3pm to 9pm
2.) educational courses to learn braille
3.) a walking cane
4.) a talking watch

Barnhart responded to those four requests as follows:

1.) Inmate Williams has an ambulatory aide assigned to him currently and this aide has been advised as well as security staff that he is to be utilized on both the AM and the PM shifts.

2.) Educational courses to learn braille will not be provided for Inmate Williams at this time.

3.) A walking cane has been approved/ordered for Inmate Williams to utilize.

4.) A standard talking watch has been approved for Inmate Williams to utilize. A memorandum will be initiated to allow accommodations for a talking watch per Inmate Williams' request.

Barnhart's response did not mention or otherwise address plaintiff's access to the TABE test or any other educational programming other than his specific request for braille classes. Ultimately, Barnhart concluded that he was "reasonably satisfied Inmate Williams' ADA issues are being addressed and recommends no further action at this time." On January 9, 2015, the Chief Administrative Officer concurred with this response.

On January 12, 2015, plaintiff submitted a point-by-point reply to each of Barnhart's determinations regarding plaintiff's grievance. Of particular relevance to this case, in reply to Barnhart's second determination regarding educational courses, plaintiff stated: "I'm unable to take the TABE test, to better educate myself and braille is needed to accomplish these Goals being that I'm legally blind. And Also any other Auxillary Aide that can help me progress." Plaintiff subsequently appealed his grievance to the IDOC's Administrate Review Board ("ARB") and included a copy of his January 12 reply statement. After an investigation and review, the

---

**5.** The Grievance Officer's Report obviously has the incorrect year listed, and it is undisputed that the actual response to plaintiff's grievance was on January 6, 2015.

ARB denied plaintiff's appeal, finding that "the issue was appropriately addressed by the facility Administration." The ARB further noted: "ADA Coordinator contacted offender has cane, aide, watch." The Acting Director of IDOC concurred in the ARB's decision. According to Sarah Johnson, the ARB Chairperson, Grievance #15-1-1 was the only grievance filed by plaintiff that was appealed to the ARB, and the ARB did "not receive[ ] any grievances from [plaintiff] regarding his access to the TABE test."

Plaintiff's initial complaint in this matter was filed on March 7, 2016, at which time plaintiff alleged that he had "never been afforded the opportunity to take the TABE test." Shortly thereafter, on March 14, 2016, plaintiff was called to the Dixon school building and a staff member administered the TABE test to plaintiff by reading the questions aloud to plaintiff and allowing him to answer the questions orally. According to plaintiff, this was not an appropriate accommodation, as the staff member "did not utilize any of the reasonable accommodations that are developed and available to give persons with visual impairments a fair opportunity on the test," such as an audio format of the test that was available from the test manufacturer and a calculator for the visually impaired to use during the test's math section.

## II. ANALYSIS

■ The Prison Litigation Reform Act requires a prisoner to properly exhaust his administrative remedies before filing an action concerning prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Pavey v. Conley, 544 F.3d 739, 742 (7th

Cir. 2008) (providing that the district court can rule on an exhaustion defense before allowing the case to proceed to discovery). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015). "Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard." Lloyd v. Dart, No. 14 C 69, 2016 WL 232422, at *2 (N.D. Ill. Jan. 20, 2016).

■ "The purpose of the exhaustion requirement is to ensure that prisons have a fair opportunity to correct their own errors through the grievance process." Pyles v. Nwaobasi, 829 F.3d 860, 867 (7th Cir. 2016). Therefore, in order to properly exhaust administrative remedies, a prisoner must "us[e] all steps that the agency holds out, and do[ ] so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (emphasis omitted). The Seventh Circuit has "taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006); see also King, 781 F.3d at 893 ("The exhaustion requirement is strict. A prisoner must comply with the specific procedures and deadlines established by the prison's policy."). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).

■ "State law determines the administrative remedies that a state prisoner must exhaust for PLRA purposes," and "Illinois has created a three-stage process for its inmates." Pyles, 829 F.3d at 864. The first step requires the inmate to attempt to resolve the problem informally through his counselor. See 20 Ill. Adm. Code § 504.810(a). If that does not resolve

the problem, the inmate must timely "file a written grievance on a grievance form." Id. The written grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." Id. § 504.810(b). Typically, the written grievance is reviewed by a grievance officer, but in this case it was properly submitted to Barnhart, the ADA Coordinator, who was required to "conduct such investigation as deemed appropriate and make written recommendations to the Chief Administrative Officer for resolution of the grievance." Id. § 504.830(b). If the inmate is not satisfied with the decision, the third step in the grievance process is to appeal the decision to the Director of the IDOC, who may refer the matter to the ARB for further review and recommendation. Id. § 504.850. In determining whether a plaintiff properly exhausted his administrative remedies, the Seventh Circuit focuses on "whether the plaintiff did all he could to avail himself of the administrative process." Wilder v. Sutton, 310 Fed.Appx. 10, 13 (7th Cir. 2009).

 In this case, there is no dispute that plaintiff completed all three stages of the grievance process with respect to Grievance # 15-1-1, but there is a dispute as to whether his current claims regarding access to the TABE test fall within the scope of that grievance. On the face of the written grievance form, there is no mention of the TABE test, the need for reasonable accommodations in order to take the TABE test, or any specific request to be given the TABE test. Therefore, at least on the surface, it appears that plaintiff did not properly exhaust his administrative remedies with respect to his current claims. In his response, however, plaintiff raises three arguments in an effort to demonstrate that he properly exhausted his administrative remedies with respect to the TABE test, which the court will address below.

 First, plaintiff argues that he properly exhausted his claim regarding the TABE test by referencing the November 11, 2014 letter he had sent to Hendrix in his written grievance.[6] This argument fails for a number of reasons. For starters, it is clear that sending a letter to a prison official is not sufficient to comply with the IDOC's grievance procedures. See, e.g., Rocquemore v. Shearing, No. 13-CV-1261-NJR-DGW, 2015 WL 1326115, at *5 (S.D. Ill. Mar. 20, 2015) ("Although Plaintiff complained of Defendants' medical treatment in a letter addressed to Dr. Shicker, this is not sufficient to establish exhaustion pursuant to the Illinois Administrative Code."); Sykes v. Feinerman, No. 08-179-JPG-CJP, 2010 WL 6001599, at *3 (S.D. Ill. Oct. 5, 2010) (explaining that "letters [to the warden] are not on IDOC grievance forms, and do not constitute grievances within the procedures set forth in § 504.800 et seq."); Taylor v. Caliper, No. 3:08-cv-00815-JPG-PMF, 2010 WL 1416052, at *2 (S.D. Ill. Feb. 5, 2010) ("Plaintiff has failed to provide the Court with any case law from this Circuit that allows an inmate to bypass the formal grievance process, and send complaints to IDOC staff through informal letters.").

Here, plaintiff is not relying exclusively on the fact that he sent a letter to Hendrix in order to demonstrate exhaustion, but is instead arguing that the reference he made to that letter in his written grievance should have been sufficient notice of his complaint. But there is nothing in the IDOC's grievance procedures, which are

---

6. Plaintiff makes no argument with respect to the referenced letter to "Ms. Bailey," and, in any event, there is no indication in the record that plaintiff's September 30, 2014 letter to her included any mention of the TABE test.

set forth in the Illinois Administrative Code, that allows for this type of grievance-by-reference procedure. Instead, the relevant portion of the Illinois Administrative Code clearly instructs that, if a prisoner is unable to resolve his complaint informally, he must file a written grievance which "shall contain factual details regarding each aspect of the offender's complaint." 20 Ill. Adm. Code § 504.810(b) (emphasis added). There is nothing in these procedures that would allow a prisoner to write down only some of his complaints on the grievance form, and then provide the remainder of his complaints by reference to a previous letter. Accordingly, the court finds that plaintiff's reference in his written grievance to a letter he had previously sent to Hendrix is insufficient to exhaust any claims that he may have raised within that letter.[7] Instead, in order to properly exhaust his claim regarding access to the TABE test, plaintiff was required to state that claim on his grievance form, at which point it could have been addressed by Barnhart. Because plaintiff failed to comply with these straightforward procedures, he failed to properly exhaust his administrative remedies.

Moreover, even if the court were to consider the referenced letter to Hendrix, it is still not clear that plaintiff was raising a claim regarding access to the TABE test. The written grievance only states that the letter was "concerning the aforemention matters," and the letter itself included a request for an ambulatory aide between the hours of 3 p.m. and 9 p.m.—a request that was specifically reasserted in the written grievance, which Barnhart then investigated and corrected. Plaintiff could have just as easily reasserted his request for

the TABE test in his written grievance, but he failed to do so.

In any event, even if Barnhart had reviewed the November 11, 2014 letter, in which plaintiff asked about attending the TABE test, the record also shows that as of December 10, 2014, Barnhart was under the assumption that plaintiff had "already taken the TABE test." This confusion highlights precisely why the IDOC requires a written grievance form that "contains factual details regarding each aspect of the offender's complaint" once an inmate's attempts at informal resolution— such as writing letters to prison officials— have failed. See id.; see also Stites v. Mahoney, 594 Fed.Appx. 303, 304 (7th Cir. 2015) (noting that "informal discussions are only the first step in the grievance procedure"). Indeed, if plaintiff had merely mentioned in his written grievance that he was denied access to the TABE test, Barnhart could have promptly addressed this concern. Instead, plaintiff improperly chose to rely on previous complaints that were included within an informal letter, which falls well short of strict compliance with the IDOC's grievance procedures.

Under these circumstances, the court finds that plaintiff's passing reference in his written grievance to a previous letter is not sufficient notice of whatever complaints may have been included within that letter and cannot be considered doing "all he could to avail himself of the administrative process." Wilder, 310 Fed.Appx. at 13.

■ Next, plaintiff argues that his January 12, 2015 reply memorandum demonstrates that he exhausted his administrative remedies with respect to the TABE test. The court disagrees. In his brief, plaintiff argues that, because the Illinois Administrative Code is "silent" on the mat-

---

7. The court offers no opinion on whether a letter that is actually attached to the grievance form could be sufficient for purposes of exhaustion. In this case, there is no evidence or even allegation to suggest that the letters plaintiff referenced in his grievance were attached to the grievance.

ter, he should be allowed to clarify his grievance or add additional facts after the grievance has been denied. But the grievance procedure is not silent on the proper procedure for raising a claim and clearly requires an inmate to include "factual details regarding each aspect of the offender's complaint" in the written grievance.[8] 20 Ill. Adm. Code § 504.810(b); see also Pavey v. Conley, 663 F.3d 899, 905 (7th Cir. 2011) ("When administrative procedures are clearly laid out ... an inmate must comply with them in order to exhaust his remedies.").

In any event, even if plaintiff's reply was considered part of the original grievance, it is still not clear that plaintiff was claiming he was denied access to the TABE test or that he needed reasonable accommodations in order to be able to take the test. Instead, his reply merely provided an explanation or justification for why he thought he needed braille classes, which was the specific issue from the grievance that Barnhart had denied. Indeed, it is apparent that the ARB did not consider plaintiff's reply memorandum to be a request for access to the TABE test, as that precise claim was never addressed by the ARB on the merits or denied on procedural grounds. Because plaintiff did not properly comply with the procedural requirements of the grievance system, which in turn prevented the IDOC from having a fair opportunity to address his claim relating to the TABE test "on the merits," plaintiff has failed to properly exhaust his administrative remedies. See Woodford, 548 U.S. at 90, 126 S.Ct. 2378.

■ Finally, plaintiff argues generally that his prior letters, along with his December 9, 2014 conversation with Barnhart, were sufficient to put the IDOC on notice that he had an issue regarding access to the TABE test. But this argument fails to recognize that these types of informal requests are merely the first step in the IDOC's grievance procedure. See 20 Ill. Adm. Code § 504.810(a). Once those informal steps had failed, plaintiff was required to formally complain about whatever issues he was still having on a written grievance form. See id. Plaintiff followed this procedure for many of the ongoing complaints he was having, such as the need for an ambulatory aide in the evening, and most of the issues that were clearly raised on the grievance form were resolved in plaintiff's favor. But plaintiff never formally complained about, or even mentioned, the TABE test on his written grievance, even though it could have easily been included, and that failure to comply with the clear requirements of the IDOC's grievance policy is what now forecloses his claim.[9]

8. Plaintiff's reliance on the unpublished opinion in Conley v. Anglin, 513 Fed.Appx. 598 (7th Cir. 2013), is misplaced. In that case, the Seventh Circuit stated, in dicta, that the defendants were barred from relying on an alleged procedural deficiency that the ARB had not relied upon in rejecting the plaintiff's appeal. Id. at 602. Moreover, although the Court noted that "the defendants cite to no case authority or prison regulation banning the inclusion of additional facts in an administrative appeal," the Court did not affirmatively hold that such a practice would be permissible. Id.

9. Citing the IDOC's Administrative Directive No. 04.01.111 regarding ADA Accommoda-

tions, plaintiff contends that Barnhart was required to, among other things, meet with plaintiff to discuss his grievance. This Directive, however, is not part of the IDOC's grievance policy, and the requirement that the ADA Coordinator "[r]eview the request and meet with the offender for interactive dialogue" is only applicable "[u]pon receipt of DOC 0286 for ADA disability accommodation." See Pl.'s L.R. 56.1 Statement, Ex. 5 § II(G)(4)(a). Although it may have been a better practice for Barnhart to meet with plaintiff to discuss his grievance, he was not required to do so by the IDOC's grievance procedures. Therefore, plaintiff's attempt to

## III. CONCLUSION

Based on the foregoing, it is clear that plaintiff's failure to include any specific complaint regarding his access to the TABE test in his written grievance prevented the IDOC from having "a fair opportunity to correct their own errors through the grievance process." Pyles, 829 F.3d at 867. Because plaintiff did not strictly comply with the IDOC's grievance procedures, his current claims are not properly exhausted and, therefore, are foreclosed by § 1997e(a). See Pozo, 286 F.3d at 1024. Accordingly, defendants' motion for summary judgment on the issue of exhaustion is granted.

place the blame on Barnhart for his own failure to exhaust is unavailing.